*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0294p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STEPHANIE WILLIAMS, Individually, and as Next
Friend of TERRANCE WILLIAMS, JR., a Minor, and
TERRANCE WILLIAMS, Individually,
                              *Plaintiffs-Appellants,*

       *v.*

CITY OF GROSSE POINTE PARK, a municipal
corporation, and MICHAEL MILLER, Officer, Jointly
and Severally,
                              *Defendants-Appellees.*

No. 05-2409

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-73596—Nancy G. Edmunds, District Judge.

Argued: October 26, 2006

Decided and Filed: August 3, 2007

Before: KENNEDY and GIBBONS, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Heather A. Jefferson, FIEGER, FIEGER, KENNEDY & JOHNSON, Southfield, Michigan, for Appellants. Julie McCann O'Connor, O'CONNOR, DeGRAZIA TAMM & O'CONNOR, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Heather A. Jefferson, FIEGER, FIEGER, KENNEDY & JOHNSON, Southfield, Michigan, for Appellants. Julie McCann O'Connor, O'CONNOR, DeGRAZIA TAMM & O'CONNOR, Bloomfield Hills, Michigan, for Appellees.

     GIBBONS, J., delivered the opinion of the court, in which KENNEDY, J., joined. ALDRICH, D. J. (pp. 6-12), delivered a separate dissenting opinion.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1

--------------------

**OPINION**

--------------------

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiff-appellant Stephanie Williams filed the instant civil rights action on behalf of Terrance Williams, Jr., against defendants-appellees the City of Grosse Pointe Park and Officer Michael Miller of the Grosse Pointe Park Police Department.  In their suit under 42 U.S.C. § 1983, plaintiffs alleged that Miller violated Williams's rights under the Fourth Amendment by subjecting him to an unreasonable seizure.  Plaintiffs further alleged that Grosse Pointe Park is liable under § 1983 for the failure of its police department adequately to train Miller.

The district court granted summary judgment in favor of defendants and held, as a matter of law, that Miller's conduct in stopping Williams's flight was objectively reasonable and that Miller therefore did not violate Williams's constitutional rights.[1]  With respect to Grosse Pointe Park, the district court held that there could be no municipal liability under § 1983 in the absence of a proven constitutional violation on the part of Miller, its agent.  Plaintiffs subsequently appealed, arguing that there are issues of material fact as to the reasonableness of Miller's conduct precluding resolution of their claims against Miller and Grosse Pointe Park on a motion for summary judgment.  Because we agree with the district court that no rational juror could conclude that Miller acted unreasonably, we affirm the decision of the district court.

I.

On the evening of August 17, 2003, Miller and Sgt. James Hoshaw–also  an officer with the Grosse Pointe Park Police Department–were on duty.  While on duty, they learned of a citizen report that three individuals in a green Dodge Shadow were tampering with cars.  Miller and Hoshaw came upon a green Dodge Shadow (the "Shadow"), driven by Williams and containing two other passengers.  Miller and Hoshaw subsequently determined that the Shadow had been reported stolen.  The video camera in Miller's police cruiser captured the events that followed.  Miller and Hoshaw pursued the Shadow.  At approximately 7:14 p.m., Hoshaw positioned his cruiser in front of the Shadow in order to block its path, while Miller's cruiser continued to approach from the rear.  One of the passengers of the Shadow exited the car on foot.  Williams then put the Shadow in reverse in an apparent effort to flee but found his egress blocked by Miller's cruiser.  As it reversed, the Shadow collided with Miller's cruiser.

Following the collision, Hoshaw exited his cruiser and, brandishing his weapon, directed an expletive toward Williams.  Hoshaw approached the Shadow and stuck his gun in the driver's side window, pointing his weapon at Williams's head.  Williams then accelerated in an effort to move around Hoshaw's cruiser and flee.  In his attempt to navigate around the cruiser, Williams drove the Shadow over the curb and onto the sidewalk.  Hoshaw, failing to release his grasp on the car, was knocked down as it accelerated.  In the next instant, the video depicts Miller firing several rounds as the car moves out of view.  One of Miller's shots struck Williams in the back of the neck, leaving him paralyzed.  A period of less than one minute elapsed from the time Hoshaw placed his car in front of the Shadow to the point at which Miller discharged his weapon.

--------------------

[1]The district court held, in the alternative, that even if Miller's conduct violated the protection afforded Williams by the Fourth Amendment, Miller was entitled to qualified immunity because he did not violate Williams's "clearly established" constitutional rights.  Because we find that the district court was correct in holding there was no constitutional violation, we need not reach this issue. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As noted above, plaintiffs filed a civil rights action against Miller and Grosse Pointe Park under 42 U.S.C. § 1983, claiming violations of Williams's Fourth Amendment rights. The district court granted summary judgment in favor of Miller and Grosse Pointe Park, holding as a matter of law that no constitutional violation occurred.

II.

This court reviews the grant of summary judgment *de novo*. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment will be affirmed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If, on the other hand, "a reasonable jury could return a verdict for the non-moving party," summary judgment for the moving party is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision, this court draws all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

III.

Title 42, section 1983 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his or her federally guaranteed constitutional rights. In a § 1983 action in which a defendant claims the protection of qualified immunity, such as the one here under review, the court must follow a two-step process in evaluating the defendant's claim of immunity. *See Saucier*, 533 U.S. at 201. Under this analytical framework, a court must first determine whether the facts, viewed in the light most favorable to the plaintiff, could support a finding that the defendant has violated the plaintiff's constitutional rights. *Id.* If the facts would support a finding of a constitutional violation, the court must also find that the conduct of the defendant violated "clearly established" constitutional rights. *Id.* If, however, the plaintiff is unable to establish sufficient facts to support a finding of a constitutional violation by the defendant, the inquiry ceases, and the court must award judgment to the defendant. *See id.*

As the district court correctly noted, the proper inquiry on defendants' motion for summary judgment is whether, after considering the facts in the light most favorable to the plaintiffs, a rational jury could find that Miller's use of deadly force against Williams was objectively unreasonable. The Supreme Court has recently summarized the principles governing excessive force cases under the Fourth Amendment and the objective reasonableness with which an officer attempting to seize a suspect must conduct himself or herself:

> [T]he constitutional question . . . is governed by the principles enunciated in *Tennessee v. Garner* and *Graham v. Connor*. These cases establish that claims of excessive force are to be judged under the Fourth Amendment's "objective reasonableness" standard. Specifically with regard to deadly force, we explained in *Garner* that it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." But "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."

*Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004) (citations omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This determination should also be made "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation."

*Id.* at 397.  It is not for the court to substitute its own personal notion of the appropriate procedure for those decisions made by police officers in the face of rapidly changing circumstances. *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).  As the *Smith* court noted, "[w]hat constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.*  The Court's mandate in *Graham* was clear: "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." 490 U.S. at 396-97.  Ultimately, the Fourth Amendment "reasonableness" test requires a "careful balancing" of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public. *See id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).  The reasonableness of a particular use of force "requires careful attention to the facts and circumstances of each particular case, including:" (1) "the severity of the crime at issue," (2) the immediacy of the threat posed by the suspect to the officers or others, and (3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Id.*

## A.

In granting Miller summary judgment, the district court relied almost exclusively on the video captured by the camera in Miller's cruiser for its determination that Miller's conduct was objectively reasonable.  According to the district court, "based on Williams' conduct, Officer Miller had probable cause to believe that Williams posed a threat of serious physical harm to Sgt. Hoshaw, himself, and to other citizens."  The court continued, "[v]iewed objectively, Williams' conduct showed that he was not intimidated by the police presence, would not hesitate to deliberately use the vehicle as a weapon, and was intent on fleeing from the police, which in turn posed a threat to the public traveling on a major Detroit thoroughfare."

Having reviewed the evidence, we are in agreement with the district court.  At the point Miller fired his weapon, he was faced with a difficult choice: (1) use deadly force to apprehend a suspect who had demonstrated a willingness to risk the injury of others in order to escape; or (2) allow Williams to flee, give chase, and take the chance that Williams would further injure Sgt. Hoshaw or an innocent civilian in his efforts to avoid capture.  Moreover, Miller had only an instant in which to settle on a course of action.  Under the circumstances, we cannot say that Miller acted unreasonably, nor do we believe that a rational juror could conclude otherwise.

The evidence fully supports the conclusion that Miller's conduct was "objectively reasonable" as a matter of law.  Miller and Hoshaw attempted to apprehend a suspected car thief.  Williams, intent on escape, collided with Miller's squad car.  Then, in spite of the fact that Hoshaw's weapon was pointed at his head, Williams continued his attempted flight, driving onto a sidewalk and knocking Hoshaw to the ground.

From Miller's perspective, Williams: (1) was undeterred by having a weapon pointed at his head; (2) acted without regard for Hoshaw's safety; (3) was obviously intent on escape; and (4) was willing to risk the safety of officers, pedestrians, and other drivers in order to evade capture.  Miller had no way of knowing whether Williams might reverse the Shadow, possibly backing over Hoshaw, or cause injury to other drivers or pedestrians in the area.  As a consequence, Miller elected to fire his weapon in order to prevent Williams's potentially causing someone injury.  That Williams may not have *intended* to injure Hoshaw or anyone else is immaterial.  From Miller's viewpoint, Williams was a danger, and he acted accordingly.

Turning to the factors identified in *Graham*, Williams was suspected of car theft, a felony.  Hoshaw, having been knocked to the ground, was in immediate danger from the Shadow.  While there are no pedestrians or vehicles in the immediate field of view of the camera in Miller's cruiser,

there can be no question that Williams's reckless disregard for the safety of those around him in attempting to escape posed a threat to anyone within the vicinity. Finally, Williams was actively avoiding arrest, apparently doing all he could to evade capture by the police. While the suspected crime was a nonviolent property offense, the immediate threat Williams posed to Hoshaw and other drivers and pedestrians and the fact that Williams elected to flee both suggest that Miller's chosen use of force to apprehend Williams was reasonable.

Our prior precedent bolsters our conclusion that Miller acted reasonably. Prior panels of this court have held that an officer may use deadly force whenever he or she, in the face of a rapidly unfolding situation, has probable cause to believe that a suspect poses a serious physical threat either to the police or members of the public. *See Dudley v. Eden*, 260 F.3d 722, 726-27 (6th Cir. 2001) (noting both that the officer was in a vulnerable position should the suspect have been armed and that the suspect could easily have continued his flight, possibly injuring innocent motorists as he had almost done at prior points in the police pursuit); *Scott v. Clay County*, 205 F.3d 867, 871-73 (6th Cir. 2000) (noting that the suspect engaged in a dangerous high speed chase and evidenced a complete disregard for the safety of the officers present and innocent motorists). While the facts of these cases vary somewhat from this case and both involve a more protracted flight from police, they each stress the need to assess the reasonableness of an officer's conduct in view of uncertain and rapidly developing circumstances. Under the circumstances, we agree with the district court that Miller did not violate Williams's constitutional rights.

The dissent relies upon *Sigley v. City of Parma Heights*, 437 F.3d 527 (6th Cir. 2006), and *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005), in support of its contention that the facts, when viewed in the light most favorable to the plaintiffs, demonstrate that Miller acted unreasonably. We respectfully disagree. The *Sigley* and *Cupp* courts were both presented with a factual dispute regarding the events that gave rise to the officers' use of deadly force. *See Sigley*, 437 F.3d at 530; *Cupp*, 430 F.3d at 769. In contrast, the facts of this case are undisputed, and while the dissent takes a different view of the events depicted on the video, we do not believe that any rational trier of fact could conclude that Miller acted unreasonably. Both *Sigley* and *Cupp* concluded that the plaintiffs' version of the facts *could* support a finding that the defendants acted unreasonably, and we have no difficulty with those conclusions. *Sigley* and *Cupp* are inapplicable to the facts of this case because the events depicted on the video demonstrate that Miller reasonably believed that Williams posed a threat of serious harm and acted in accordance with that belief. The dissent's assertion that *Smith* and *Cupp* should control the outcome of this case depends upon its view of the facts of this case–purportedly after viewing the evidence in the light most favorable to the plaintiffs–for which we find no support in the record.

### B.

As noted above, the district court also granted summary judgment in favor of Grosse Pointe Park because, in the absence of a finding that its agent, Miller, violated Williams's constitutional rights, Grosse Pointe Park could not be held liable under § 1983. Having already concluded the district court was correct with respect to the reasonableness of Miller's conduct, we agree with the district court that Grosse Pointe Park may not be held liable under § 1983. *See Cartwright v. City of Marine City*, 336 F.3d 487, 495 (6th Cir. 2003) (quoting *Scott*, 205 F.3d at 879); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

### IV.

For the foregoing reasons, we affirm.

---

**DISSENT**

---

ANN ALDRICH, District Judge, dissenting.  I join the panel's opinion with respect to its statement of the posture of the case and its summary of the facts in Section I.  However, because I believe that genuine issues of material fact remain regarding the constitutional injury to the plaintiff, and the clear establishment of the constitutional right involved, I respectfully dissent.

**I.**

As the panel notes, in this action under 42 U.S.C. § 1983, the court must analyze the plaintiff's claims viewing the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Doing so requires review of the videotape of the shooting, taken from defendant Officer Michael Miller's ("Miller") car, as well as his deposition testimony and the deposition testimony of Sergeant James Hoshaw ("Hoshaw").

The videotape shows, in the light most favorable to the plaintiff, Hoshaw's police cruiser cutting off the green Dodge Shadow driven by Terrance Williams ("Williams") at approximately 7:15 p.m. on August 17, 2003. R.32, Exhibit E ("Miller video"), at 1:27, Joint Appendix ("J.A.") Volume II.  As Hoshaw's cruiser begins to pull in front of the Shadow, cutting it off from its planned turn, Williams immediately puts the Shadow into reverse. *Id.*, at 1:27-28.  Hoshaw, meanwhile, exits his cruiser. *Id.*, at 1:28-29.  After putting the Shadow into reverse, Williams backs up and strikes Miller's cruiser, with the nose of the vehicle turning to the right as it reverses. *Id.*, at 1:29.  Hoshaw runs up to the Shadow, sticks his firearm and his arm into the open window, and screams an expletive at Williams. *Id.*, at 1:31.  Williams immediately leans away from Hoshaw's firearm, with his head nearly over the passenger side seat, and shifts the Shadow into drive. *Id.*  Williams then pulls away forward and to the right, knocking Hoshaw down. *Id.*, at 1:32.  The left rear tire of the Shadow appears to run over Hoshaw's foot and/or lower leg, with Hoshaw rolling away from the departing Shadow and towards his cruiser. *Id.*  Miller then enters the frame, firing four shots at the Shadow, which had pulled up onto the sidewalk to the right in an attempt to escape. *Id.*, at 1:32-33.  It is unclear from the videotape exactly when Miller exited his cruiser, what he saw before he exited, what he saw after he exited, and what he saw before he opened fire.

Later, on the videotape, Miller apparently states to Williams, who is now paralyzed, that he "almost ran over my sergeant, man." *Id.*, at 3:29-31.  Miller then states to Hoshaw that he "thought [Williams] was going to kill you, boss." *Id.*, at 3:49-50.  The audio appears to cut out just after an officer asks Miller "what happened." *Id.*, at 4:59.

At his deposition, Miller indicated that he had no specific reason to believe Williams was armed.  Miller Dep. at 31:23-32:1, J.A. 208.  Miller also indicated that he did not believe Williams intended to force his cruiser back when he hit it. *Id.*, at 34:19-23, J.A. 209.  Miller claims to have perceived Hoshaw dragged behind the fleeing Shadow. *Id.*, at 41:15-16, 43:2-4, 91:7-23, J.A.211, 223.  That, and the threat to the public, was why Miller opened fire. *Id.*, at 97:22-98:4, J.A. 225.  However, Miller did not see anyone immediately in front of the fleeing Shadow. *Id.*, at 43:8-44:4, 46:9-11, J.A. 211-12.  And the videotape from Miller's cruiser indicates approximately four cars passing by just before the shooting, and approximately a half-dozen cars passing by shortly afterward.  Miller video, 1:25-2:25, J.A. Vol. II.  Shortly before Hoshaw moved to block Williams's vehicle from turning onto Harper Avenue, two cars turn from Harper onto Three Mile, passing Williams and both police vehicles. *Id.* at 1:23-25.  As Hoshaw pulled his cruiser in front of Williams's vehicle, a truck drives past on Harper, and it is the only vehicle to appear on the video until after the shooting. *Id.* at 1:25.  Williams is shot as he begins to pull away, approximately ten seconds after the truck passed

the Harper/Three Mile intersection from left to right on the video and ten seconds before another vehicle appears, also traveling in that direction. *Id.* at 1:25-44. No vehicle traveling right to left on the video – what would have been oncoming traffic had Williams successfully pulled away – appears until approximately forty seconds after the shooting. *Id.* at 2:13. No pedestrians were visible on the video on the near side of the street, where the sidewalk the Shadow drove onto is located, and one individual on a bicycle is visible on the far side of the street shortly after the shooting. *Id.* at 1:25-2:25.

For his part, Hoshaw agreed that there was no reason to believe Williams or anyone else in the Shadow was armed. Hoshaw Dep., at 61:21-62:6, J.A. 253. Hoshaw also agreed that it was not prudent of him to stick his arms into the Shadow before the individuals inside it had been secured. *Id.*, at 100:4-7, J.A. 262. However, Hoshaw indicated that he had no reason to believe Williams intended to run him over or hit him with the Shadow. *Id.*, at 130:2-9, 133:13-18, J.A. 270-71. Furthermore, Hoshaw indicated that the Shadow, after running over his foot and pulling away, was no threat to him unless it went into reverse. *Id.*, at 157:6-14, J.A. 277.

Despite these facts, the district court found that Miller had probable cause to believe that Williams, driving the Shadow, posed a threat of serious harm to Miller, Hoshaw, and to the public. J.A. 342. The threat to Miller cannot be sustained by the facts in the record. At no point do Miller or Hoshaw suggest a threat of serious physical harm to Miller from Williams' actions behind the wheel. The threat to Hoshaw, despite its stated perception by Miller at his deposition, is belied by the videotape and by both officers' testimony. Both officers indicated that the Shadow's contact with Miller's cruiser and with Hoshaw were not intentional. Miller Dep., at 34:19-23, J.A. 209; Hoshaw Dep., at 130:2-9, 133:13-18, J.A. 270-71. Furthermore, the videotape shows Hoshaw rolling away from the Shadow immediately after it begins traveling forward, not being dragged by the Shadow at any time. Because it is unclear from the videotape precisely what Miller saw and where he saw it from, it is impossible to find that Miller's perception of Hoshaw being dragged was objectively reasonable as a matter of law, viewing the facts in the light most favorable to the plaintiffs, as we must in this case.

The district court also found that Williams was not intimidated by the police, would not hesitate to deliberately use the Shadow as a weapon, and was intent on fleeing, which posed a threat to the public traveling on the street. J.A. 343. However, the evidence in the record, viewed in the light most favorable to the plaintiffs, shows that Williams leaned away from Hoshaw's weapon, in fear. Miller video, at 1:31. Williams' attempt to flee from the police does not show a lack of intimidation, as a matter of law. Indeed, fleeing from police can be construed as a clear sign of intimidation by the police, just as leaning and driving away from a firearm pointed at one's head can be construed as a clear sign of fear caused by the police. Moreover, both Miller and Hoshaw's deposition testimony make it impossible to find, as a matter of law and viewing the facts in the light most favorable to the plaintiffs, that Williams was deliberately using the car as a weapon. Miller Dep., at 34:19-23, J.A. 209; Hoshaw Dep., at 130:2-9, 133:13-18, J.A. 270-71. Finally, the threat to the public, while not insubstantial, was not as immediate as the district court found, based on the evidence in the record. Miller video, 1:25-2:25, J.A. Vol. II; Miller Dep., at 43:8-44:4, 46:9-11, J.A. 211-12. As the video shows, had Williams successfully turned right onto Harper Avenue, he would have pulled onto a street apparently clear of nearby vehicle traffic in either direction and of pedestrians on either side of the road.

## II.

As the panel notes, to survive summary judgment, the plaintiff must show a violation of Williams' constitutional rights, and that the rights violated were clearly established. *Saucier*, 533 U.S. at 201. To establish a violation of Williams' Fourth Amendment rights against unreasonable seizure, the standard announced by the Supreme Court in *Tennessee v. Garner* applies:

> Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so . . . . Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

471 U.S. 1, 11 (1985).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Garner*, 471 U.S. at 8 (citation omitted)). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." 490 U.S. at 397. While, as the panel notes, we must be mindful of substituting "personal notions of proper police procedure" and the dangers of "analyzing the question at leisure," it remains the duty of this court to apply the law to the facts and pronounce Miller's actions objectively reasonable or unreasonable. *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). As the Supreme Court states, the "calculus of reasonableness" is to be applied with "allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving," but allowance does not require deference, and calculus must be performed with the proper purpose in mind – to determine whether sufficient evidence has been presented that warrants presentation of the case to a jury. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

To apply the principles in *Garner* and *Graham*, the court must look at three factors: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Garner*, 471 U.S. at 8-9). As the Sixth Circuit has stated, "[t]he main issue is whether [the arrestee] posed an *immediate* threat to [officers] and the safety of others on the night of the shooting." *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006) (emphasis added).

In this case, the panel claims that from Miller's perspective, Williams acted without regard for Hoshaw's safety, obviously intended escape, and was willing to risk the safety of others to evade capture. I respectfully disagree with that summary of the facts, because it does not view the facts – all of the facts – in the light most favorable to the plaintiffs as *Saucier* commands. First, while Williams acted without regard for Hoshaw's safety as he pulled away, that is not the crucial inquiry; the question is whether, after pulling away, Williams posed an immediate threat to Hoshaw or others. And while Williams was certainly intent on escape, as in *Garner*, intent on escape alone is insufficient. The lack of a truly imminent threat to Hoshaw or others, viewing the facts in the light most favorable to the plaintiffs as we must, indicates the possibility that a rational fact-finder could find Miller's actions unreasonable.

The pertinent test, as both the Supreme Court and the Sixth Circuit point out, is not whether Williams posed a threat of serious harm to others, but whether he posed an *immediate* threat of harm to officers or to the public.[1]  *Graham*, 490 U.S. at 396; *Sigley*, 437 F.3d at 534.  According to the

---

[1] The majority focuses on the presence of the threat from Williams, as opposed to whether that threat was immediate, and that is the crux of our disagreement.

district court, Williams posed such an immediate threat to Miller, Hoshaw, and to the public. While the district court correctly points out that the facts concerning the threat to Miller are undisputed, it arrived at the incorrect conclusion; as the video and Miller's own deposition testimony make abundantly clear, Miller was never under a threat of serious harm from Williams, much less an immediate threat.

As for the threats to Hoshaw and to the public, the facts in the record are in dispute because they are essentially incomplete. According to Miller's testimony, he perceived Hoshaw being dragged behind Williams's vehicle; the video both (a) belies that testimony, because immediately after the vehicle pulls away and Hoshaw is struck in the arm by the doorframe, Hoshaw and the vehicle travel in opposite directions so that he clearly is never dragged by Williams's vehicle, and (b) fails to show what Miller actually perceived of the alleged threat, because Miller does not come into view of the camera until he opens fire. Therefore, the record does not show an undisputed, immediate threat of serious harm to Hoshaw. At best, it shows a situation where a court on summary judgment could draw the inference either way; as *Saucier* commands, the inference must be drawn in Williams's favor, and no immediate threat presumed, where the evidence fails to demonstrate that threat beyond dispute.

Finally, with respect to the immediate threat to the public, the only evidence in the record indicating the presence of members of the public who might be threatened is the video. The video clearly shows no members of the public – either in vehicles or on foot – in immediate danger from being struck or run over by Williams's vehicle, had he successfully pulled onto Harper Avenue. The video shows that at the precise moment Williams attempted to pull away, Harper Avenue was apparently relatively clear of other vehicle traffic and pedestrians. Although the majority asserts that Williams posed a threat to anyone within the vicinity, the video shows that there were apparently no members of the public in the vicinity to be immediately threatened by Williams's actions. However, the video is only indisputable for what it actually shows, and it does not show the traffic conditions extending in either direction on Harper Avenue, nor what pedestrians may have been present along Williams's intended course of travel. Thus, the video does not indisputably establish precisely what threat to the public existed or whether such threat was immediate enough to warrant the use of deadly force by Miller. Without more evidence in the record of members of the public who were immediately threatened by Williams's vehicle, as opposed to the lack of such threat shown by the video, the threat remains in dispute, and under *Saucier*, cannot be presumed.

The panel cites two cases in support of its finding that firing on a fleeing vehicle is reasonable. In the first, *Dudley v. Eden*, the court held that the police officer acted reasonably when he fired on a suspected unarmed bank robber, when that suspect had been fired upon by officers, had attempted to escape by recklessly driving into and among oncoming traffic, and had crashed into the officer's car. 260 F.3d 722, 727 (6th Cir. 2001). The facts in this case differ greatly from those in *Dudley*, because Williams was not suspected of a crime of violence such as robbery, but a crime against property. Moreover, Williams had not driven recklessly through traffic; at most, after Miller commented and the videotape from his cruiser showed Williams driving with care and prudence prior to Hoshaw cutting him off, Williams negligently backed into Miller's cruiser. Finally, in *Dudley*, the plaintiff had rammed the police officer's vehicle after engaging in reckless driving. *Id.* Here, Williams backed into Miller's cruiser, without any apparent intention to ram it.

In the second case cited by the panel, *Scott v. Clay County*, the Sixth Circuit held that the police officer acted reasonably when he fired on a suspect after a twenty-minute high speed pursuit, during which the suspect ran at least one car off of the road, and then attempted to ram that officer and another officer with his car. 205 F.3d 867, 872, 877 (6th Cir. 2000). Again, the facts in this case differ greatly from *Scott*. There was no pursuit, no cars were run off the road, and Williams made no attempt to ram any car or any officer. And despite the panel's implication that these more protracted cases stress the need to assess reasonableness of police conduct in the face of uncertain

and rapidly developing circumstances, two other Sixth Circuit cases where police conduct was found unreasonable more clearly illustrate why Miller's conduct was unreasonable in this case, viewing the facts in the light most favorable to the plaintiffs.

In *Sigley v. City of Parma Heights*, the arrestee/decedent's car was nearly surrounded by two police vehicles during an attempt to complete an arrest on drug trafficking charges in the parking lot of a bar. 437 F.3d at 529-30. The driver backed the car up, apparently unintentionally hitting the hand of an arresting officer standing nearby, and began to pull away in an attempt to flee. *Id.* at 530. The Sixth Circuit, drawing all inferences in the plaintiffs' favor because, as in this case, the district court had granted the defendants summary judgment, noted that the defendant police officer then shot the driver as he was driving away, well before the car reached two other officers who were blocking the entrance and exit to the parking lot. *Id.* at 531. In that case, because the officer who shot the driver was behind the car as it fled and because the officer had no probable cause to believe there was "significant threat of death or serious physical injury to others," the Sixth Circuit held that the facts as presented precluded granting summary judgment since, if all inferences were drawn in the plaintiffs' favor, a constitutional violation had occurred. *Id.* at 534, 36. As in that case, the only visible individuals to which the Shadow might have posed an immediate threat were behind Williams. In *Sigley*, there were even other officers, visibly in the path of the fleeing driver, but not in immediate danger. *Id.* at 531. And while Hoshaw had been struck by the Shadow as the officer was in *Sigley*, the Sixth Circuit found, viewing the facts in the light most favorable to the plaintiffs, that the fleeing individual's rights were violated. *Id.* at 537.

In *Smith v. Cupp*, an arrestee was handcuffed and placed in the back of a police cruiser which lacked a partition separating the back seat from the front seat, and which had been left running. 430 F.3d 766, 769 (6th Cir. 2005). The arrestee managed to get into the front seat and get control of the police cruiser and began to drive it away in an attempt to flee. *Id.* at 769-70. The officer then shot at the arrestee even though he was not in the car's path. The Sixth Circuit held that, on those facts, the officer had violated the arrestee's Fourth Amendment rights because the cruiser was past the officer and driving away, and there was no immediate danger to anyone in the vicinity. *Id.* at 773. The Sixth Circuit, in *Cupp*, acknowledged that an arrestee driving away in a police cruiser posed some danger, but not danger grave enough to justify the use of deadly force. There, as here, viewing the facts in the light most favorable to the plaintiffs, the lack of an immediate threat to Hoshaw or to any members of the public, means that the danger posed by Williams was not enough to justify the use of deadly force.

It is clear that this case more closely resembles *Sigley* and *Cupp* rather than *Dudley* and *Scott*, and most resembles *Sigley* on both the facts and the proper procedural course. While Williams was suspected of a felony, that felony involved a crime against property, not against persons, and was not as serious a threat as the suspected robber in *Dudley* or the driver who led police on a twenty-minute chase in *Scott*. The majority suggests that *Sigley* and *Cupp* are inapplicable to the facts of this case in part because the courts in *Sigley* and *Cupp* were both presented with a factual dispute regarding the events that gave rise to the officers' use of deadly force, whereas the facts of this case are undisputed because of the video. Although the majority asserts that the video demonstrates that Miller reasonably believed that Williams posed a threat of serious harm, the video and the record as a whole do not demonstrate, beyond dispute, that Williams posed an immediate threat of serious harm to Miller, Hoshaw, or to the public. The video shows, beyond dispute, no threat to Miller, and disputable threats to Hoshaw and to the public, because the video does not show what Miller saw of Hoshaw's condition or members of the public near enough to be in imminent danger from Williams's vehicle. On this record, a rational trier of fact could indeed find that Williams's actions posed no *immediate* threat to anyone and that Miller's actions were therefore unreasonable.

### III.

Although the panel did not review the district court's finding that Miller did not violate Williams' clearly established constitutional rights, because I would find that Miller violated Williams' rights, I will analyze whether Williams' rights were clearly established. As the Supreme Court put it, "the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . ." *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. at 202. If the right was not "clearly established", then Miller is entitled to qualified immunity and summary judgment. "Qualified immunity operates in this case . . .to protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." 533 U.S. at 206 (quoting *Priester v. Riviera Beach*, 208 F.3d 919, 926-927 (11th Cir. 2000)).

The two cases setting out the Fourth Amendment standard – *Garner* and *Graham* – have been applied by the Sixth Circuit, but, "following the lead of the Fourth Amendment's text, [*Garner* and *Graham*] are cast at a high level of generality . . . . Of course, in an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (citations omitted). In *Brosseau*, an unarmed arrestee attempting to drive away was shot by an officer, even though the officer was not in the car's path, because the officer thought there was a weapon in the car and because of a threat to other officers in a roadblock at the end of the street. *Id.* at 196, 200. The Supreme Court held that, even assuming the arrestee's rights were violated, his rights were not clearly established because of those two factors.

However, the Sixth Circuit has held – in *Sigley* and in *Cupp* – that where there is no immediate threat to the officers or anyone else, the right to be free from the use of deadly force is "obvious" under *Garner* and *Graham* and therefore "clearly established" to prevent qualified immunity from attaching. *Sigley*, 437 F.3d at 537 (holding that a clearly established right was violated when the officer shot even though he was behind the car, out of danger, and the arrestee was simply driving in attempt to flee and avoid others); *Smith*, 430 F.3d at 776 (holding that unlike *Brosseau*, where there is no suspicion of a firearm, where the crime did not involve infliction or threatened infliction of serious physical harm, and where there is no imminent threat to others, a clearly established right was violated).

Much like the drivers in *Sigley* and *Cupp*, Williams did not pose an immediate threat to anyone that Miller knew of or saw, and both Miller and Hoshaw were out of danger at the time Miller opened fire. Therefore, the district court's finding that even if Williams's rights were violated, those rights were not clearly established, is erroneous. The district court's grant of summary judgment in favor of Miller should therefore be reversed, and the claim against him remanded for trial.

### IV.

Finally, the district court also granted summary judgment in favor of defendant City of Grosse Pointe Park, Michigan ("Grosse Pointe Park"), finding that no claim could survive against Grosse Pointe Park because Miller had not violated Williams' rights. Because I would find on the facts, viewed in the light most favorable to the plaintiffs, that Williams' clearly established constitutional right against unreasonable seizure by use of deadly force was violated by Miller, I would reverse and remand the district court's grant of summary judgment in favor of Grosse Pointe Park for further proceedings.

## V.

For the reasons stated above, I would depart from the panel's reasoning, and hold that the record does not justify affirming the district court's grant of summary judgment in favor of Miller and Grosse Pointe Park.  Viewing the facts in the record in the light most favorable to the plaintiffs, I would instead reverse and remand this matter to the district court for trial on the claim against Miller and for further proceedings on the claim against Grosse Pointe Park.