ALICE M. BATCHELDER, Circuit Judge,
dissenting
At the heart of the majority’s analysis is its conclusion that, “Viewed in the light most favorable to Lewis, a jury could conclude from the video that a reasonable officer would not have believed [that Officer Needham] or anyone else was ever in danger.” Maj. Op. 345. No one was ever in danger? That is not the video I have reviewed.
To begin with, it is simply not true that, as majority puts it, “the video does not clearly show that Lewis ‘targeted’ Need-ham when he accelerated the vehicle and attempted to flee.” Maj. Op. 343. What it actually shows is that, after he perceived that Lewis was clambering over the seat *348 back from the back seat into the driver’s seat, Officer Needham began to run in front of the car to stop Lewis from escaping, drawing his weapon. At the moment Lewis began driving forward, the road ahead of him was clear of obstacles and traffic with the exception of the .presence of Officer Needham. Then, the video shows with a clarity that no reasonable juror could ignore that, as Lewis was accelerating, Needham was moving out of the car’s path, eventually exiting it, at which point Lewis swerved toward him. If swerving a car at someone is not “targeting,” I do not know what is.
Needham was of course no longer in front of the car when he opened fire, but this is far from dispositive. “An officer may ... fire at a fleeing vehicle even when no one is in the vehicle’s direct path when ‘the officer’s prior interactions with the driver suggest that the driver will continue to endanger others with his car.’” Cass v. City of Dayton, 770 F.3d 368, 375 (6th Cir. 2014) (quoting Hermiz v. City of Southfield, 484 Fed.Appx. 13, 16 (6th Cir. 2012)). There is no dispute that there was traffic in the immediate vicinity. And though the underlying crime—marijuana possession— was not serious, Lewis’s actions, including his deliberate and reckless operation of the vehicle (a violent felony under Michigan law, Mich. Comp. Laws § 750.81d), which Officer Needham had just barely escaped, provided ample reason for him to believe that Lewis posed an immediate and serious threat to his and others’ safety, justifying the use of deadly force. As was the case in Williams v. City of Grosse Pointe Park, “there can be no question that [the driver’s] reckless disregard for the safety of those around him in attempting to escape posed a threat to anyone within the vicinity.” 496 F.3d 482, 487 (6th Cir. 2007). Indeed, like the suspect in Williams, Lewis was apparently undeterred by having a gun pointed at him, was hell-bent on escaping, and was willing to risk the safety of others in order to get away. See Id. at 486-87.
. The majority contends that the timing and circumstances of this incident make it distinguishable from Williams. Of course, no two excessive force cases are exactly alike, and I grant that the situation in that case was in some ways more extreme. For instance, the underlying crime in Williams—auto theft—was more serious than marijuana possession, though, notably, both are non-violent offenses. Also, at the time of the shooting, the suspect in Williams had, in his attempt to escape, already collided with a police car and had left no doubt that having a gun pointed at him just inches from his head was not going to deter him from escaping. See id. at 484. But in other ways, the situation in that case was less serious. There were no pedestrians or civilian vehicles nearby, and the officer was behind the car when he opened fire, not beside it. Id. Moreover, unlike this case, the suspect in Williams was, at the time he was shot, attempting to navigate around the officer’s car with a view toward escaping, not toward running anyone down. Id.
What matters, and what the majority fails to acknowledge, is that in both cases the officers faced “a rapidly unfolding situation [and] ha[d] probable cause to believe that [the] suspect pose[d] a serious physical threat either to the police or members of the public,” a fact that categorically justifies the use of deadly force. Id. (citing Dudley v. Eden, 260 F.3d 722, 726-27 (6th Cir. 2001); Scott v. Clay County, 205 F.3d 867, 871-73 (6th Cir. 2000)).
And even if it were true that Williams is not on point, and even if a reasonable jury could conclude that any threat to those in the vicinity had dissipated by the time *349 Officer Needham entered the comparative safety of being beside the swerving car rather than in its immediate path, the fact remains that he opened fire less than one second after he had escaped from what can only be described as mortal peril. There is thus no basis for the majority’s conclusion that Officer Needham violated the Constitution because, even accepting this construction of the facts, the decision to shoot was not unreasonable—it would be a quintessential example of “a dangerous situation [that] evolved quickly to a safe one before the police officer had a chance to realize the change.” Smith v. Cupp, 430 F.3d 766, 774-75 (6th Cir. 2005). The majority stresses the fact that Needham lowered his gun as having some significance on this point. But they ignore the context: the video, again with indisputable clarity, reveals that Needham lowered his weapon and began moving out of the car’s path as soon as Lewis began driving away and that he raised it again only after Lewis began to swerve toward him.
Unlike Cupp and Godawa, which both involved material disputes about what exactly happened at the critical moments, see Cupp, 430 F.3d at 774 (6th Cir. 2005); Godawa v. Byrd, 798 F.3d 457, 466 (6th Cir. 2015), there is nothing murky or indeterminate about the video that could be construed in the plaintiffs favor here. Unlike Cupp, this is not a case where a reasonable jury could conclude that the officer was “running towards the ... car” at the time he opened fire. 430 F.3d at 774. Nor would anyone conclude that Officer Needham “was never in the line of flight” and, hence, was “never in any danger.” Id. And unlike in Godawa, there is nothing in the record suggesting that Needham “initiated the contact” between himself and the car, that the car “did not drive in a manner that endangered [his] life,” or that he “was effectively chasing” the car at the time he opened fire. 798 F.3d at 463-65.
These distinctions matter, and we are wrong to ignore them. Contrary to the majority’s apparent preference here, the fact that an officer put himself in harm’s way does not mean that his actions were therefore objectively unreasonable. See Kirby v. Duva, 530 F.3d 475, 482 (6th Cir. 2008). Indeed, all else being equal, the decision to stand with gun drawn in front of a stationary vehicle whose driver appears to be getting ready to flee is not a constitutional violation, much less a clearly established one. See Estate of Starks v. Enyart, 5 F.3d 230, 233-34 (7th Cir. 1993) (“[I]f Black had been in front of the vehicle before the car started forward, all three officers could have fired and would be protected by qualified immunity.”).
Officer Needham’s split-second decision to shoot did not violate Lewis’s right to be free from excessive force. He—along with all except those who are “plainly incompetent or ... knowingly violate the law”—is therefore entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In refusing to grant such immunity here, the majority adds confusion not only to law of this circuit, but also to the difficult task faced by law enforcement in applying what we say is clearly established law. How exactly we expect them to conform their actions to the rule purportedly applied in this case is beyond me. I suppose they will conclude that they must stand idly by, obstructing would-be escapees with nothing more than entreaties to stop. That is not the law, nor should it be. The district court’s order denying summary judgment in Officer Needham’s favor should therefore be re *350 versed.[1]1 dissent.

. If my views had prevailed in this case, the normal course would have been for us to use our pendent appellate jurisdiction to also direct entry of summary judgment in the Charter Township of Flint's favor. See Lane v. City of LaFollette, Tenn., 490 F.3d 410, 423 (6th Cir. 2007). But the notice of appeal mentions only Officer Needham in his individual capacity, and nothing in that document suggests that Flint intended to appeal. See Fed. R. App. P. 3(a)(2), (c)(1), (c)(4). We would thus not have jurisdiction to rule on that issue. Similarly, I also would not reach the Estate’s remaining claims, but would leave them for the district court to decide in the first instance.