David R.H. MALLORY, Plaintiff–
Appellant,

v.

NOBLE CORRECTIONAL INSTITUTE,
Thomas B. Haskins, L.R. McCowan,
Michael Nimi Carter, and Jack Ram-
sey, Defendants–Appellees.

No. 01–3302.

United States Court of Appeals,
Sixth Circuit.

Sept. 3, 2002.

Before SILER, COLE, and CLAY, Circuit Judges.

**OPINION**

COLE, Circuit Judge.

Plaintiff-appellant, David R.H. Mallory, an African–American corrections officer, sued his employer, Noble Correctional Institute ("NCI"), and five officers at NCI, Warden Thomas B. Haskins, Major L.R. McCowan, Corrections Officer Christopher Cherne, Sergeant Michael Carter, and Captain Jack Ramey, for five claims relating to racial discrimination in employment. Mallory's complaint consisted of claims for (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964; (2) violations of 42 U.S.C. § 1981 rights to contract; (3) violations of the Equal Protection Clause as actionable under 42 U.S.C. § 1983; (4) conspiracy to violate civil rights under 42 U.S.C. § 1985; and (5) abuse of process and malicious prosecution. After filing the complaint, Mallory's lawyer conducted minimal discovery for over sixteen months. It was not until after the discovery deadline had passed, however, that Mallory's lawyer moved to extend it. The district court denied that motion. Appellees then moved for summary judgment on all counts. Mallory opposed that motion and moved for additional discovery under Rule 56(f). The district court denied Mallory's Rule 56(f) motion, but granted summary judgment to appellees. Mallory appeals the district court's denial of his motions for discovery and the grant of summary judgment to appellees. For the reasons that follow, we AFFIRM the district court's orders and judgment.

**I.**

Mallory, an African–American corrections officer, worked for the Ohio Department of Corrections beginning in 1987. Mallory began work at NCI in August of 1996, approximately a week after he had been promoted to lieutenant. Mallory believed that many of his co-workers at NCI did not like him due to his race.

On December 22, 1996, Mallory's employment at NCI took a turn for the worse. That morning, an irate inmate, Irvin, began verbally abusing Mallory in Mallory's office. According to the testimony of two eye-witnesses, Sergeant Michael Carter and Corrections Officer Christopher Cherne, Mallory threw Irvin backwards into a photocopying machine and beat him six times with his forearms and fists. Mallory has consistently denied that he used any force against Irvin and instead claims that the other officers conspired to make a case against him. A nurse investigated Irvin an hour and a half after the incident and did not report any signs of the use of force on Irvin's body. In fact, when questioned about whether force was used on him, Irvin responded "I'm fine[,] why are you asking?"

Nevertheless, news of the Mallory–Irvin incident quickly spread through the NCI chain of command. Shortly after the incident, Carter and Cherne told Captain Jack Ramey, who in turn called Major L.R. McCowan at home to relay the news. The next morning, McCowan met with Mallory to discuss the reported use of excessive force. McCowan claims that Mallory admitted to bumping Irvin with his chest and striking Irvin one time. Later that day, Warden Haskins called a meeting with Mallory and several NCI officials, including McCowan and NCI labor relations officer, David Lynch. At the close of that

meeting, Haskins placed Mallory on administrative leave without pay.

NCI's investigation of the Irvin incident continued while Mallory was on administrative leave. In an initial interview with Lynch, Irvin reported that Mallory did not strike him and that the closest they had come to each other was three feet. But, in a second interview with Haskins, Irvin reportedly admitted that Mallory had struck him. Based on that information, Haskins directed that Irvin's prior statement not be included in the record for the pre-disciplinary proceeding. In addition, on January 10, 1997, Haskins filed a criminal assault complaint against Mallory for his reported use of excessive force on Irvin.

On February 18, 1997, NCI held a pre-disciplinary proceeding for Mallory. The hearing officer concluded that Mallory used excessive force and failed to report a violation of a work rule (the use of excessive force). As a result, Mallory was terminated, effective February 27, 1997.

Mallory responded to his termination in two ways. First, he filed a complaint with the Equal Employment Opportunity Commission on May 28, 1997. In that complaint, Mallory claimed that appellees racially discriminated against him and falsely accused him of using excessive force. Second, Mallory appealed his termination to the State Personnel Board of Review (the "SPBR"). As part of its review process, the SPBR assigned an administrative law judge ("ALJ") to conduct an evidentiary hearing on August 8, 1997. The ALJ issued a report on October 20, 1997, which concluded that while Mallory did not use excessive force, he did use some amount of force on Irvin. As a result, the ALJ recommended that Mallory be demoted to the position of corrections officer and receive a three-month suspension, with reinstatement effective June 1, 1997. The SPBR accepted the ALJ's recommendations and then punished Mallory accordingly. Based on the SBPR's decision, Mallory returned to work on December 15, 1997.

Mallory claims that upon his return, he was racially discriminated against and/or retaliated against for filing the EEOC charge. Mallory articulated several instances of racial discrimination and/or retaliation: (1) he was unnecessarily required to re-attend training academy; (2) he was needlessly forced to complete three to four weeks of on-the-job training; (3) Haskins did not file the reinstatement order immediately, nor did he remove the termination order immediately after Mallory was reinstated; (4) Mallory was not permitted to return to his position as an unarmed self-defense instructor; (5) NCI investigated whether Mallory had abused the sick leave policy; and (6) NCI systematically denied Mallory every transfer or promotion for which he applied. As a result of this perceived discrimination and/or retaliation, Mallory filed another EEOC charge on November 9, 1998. On April 9, 1999, Mallory received a right-to-sue letter for that (his second) EEOC charge. Using the right-to-sue letter as a basis for suit, Mallory filed a complaint against appellees in federal district court on July 8, 1999.

After filing the federal complaint, Mallory's attorney took minimal pretrial action. At a November 23, 1999, preliminary pretrial conference, the magistrate judge directed the parties to begin taking depositions no later than April 15, 2000 to meet the December 2000 trial date. Without altering the magistrate judge's directive, the district court, on April 4, 2000, rescheduled the trial date for March 2001. Regardless, neither party took any depositions by the April 15 deposition commencement date. On July 17, 2000, the parties submitted a joint, written status report with a September 29, 2000 non-expert dis-

covery deadline. On September 22, 2000, the magistrate judge entered a scheduling order, which confirmed that all non-expert discovery had to be completed on or before September 29. Although appellees' counsel deposed Mallory before the cutoff, Mallory's lawyer served only one set of interrogatories and document requests on appellees before the deadline.

Mallory's lawyer's interest in conducting additional discovery first manifested on November 6, 2000, when he filed a motion to extend the discovery deadline. In his supporting memorandum, Mallory's counsel explained that he delayed discovery because he was awaiting a response to Mallory's first EEOC charge. The district court had no patience for that explanation and denied Mallory's motion. Mallory now appeals the district court's denial of that motion.

Taking advantage of Mallory's failure to conduct adequate discovery, appellees filed a summary judgment motion. Mallory responded with a motion for additional discovery under Rule 56(f), with the required accompanying affidavit, and a memorandum in opposition. That motion sought discovery to respond to arguments raised in the appellees' summary judgment motion. Citing timeliness reasons again, the district court rejected Mallory's Rule 56(f) motion. Mallory also appeals the district court's denial of that motion.

After considering the parties' summary judgment briefing, the district court disposed of much of Mallory's case on grounds that Mallory does not now dispute: Eleventh Amendment immunity; issue preclusion based on the SBPR's findings; the §§ 1981 and 1983 statute of limitations; individual liability under Title VII; and the failure to state a § 1983 malicious prosecution claim. In addition, in his memorandum in opposition to summary judgment, Mallory conceded the § 1985 conspiracy claim and the Ohio-law claims for malicious prosecution and abuse of process.

The district court disposed of the remainder of Mallory's case by concluding that Mallory was unable to establish *prima facie* cases for his racial discrimination and retaliation claims. On the suspension and demotion claims, the district court held that Mallory failed to present evidence that similarly situated non-minority persons were treated more favorably. Moreover, the district court held that Mallory's *prima facie* retaliation claims failed because he did not identify a causative link between NCI's actions and the alleged retaliation. Finally, on Mallory's retaliation and discrimination claims relating to his return to work, the district court concluded that Mallory failed to state a *prima facie* case because he suffered no adverse employment action. Mallory appeals the district court's conclusions that he did not make out *prima facie* cases for retaliation and employment discrimination.

## II.

■■■ Mallory appeals the district court's denial of his motion to extend the discovery cutoff and the district court's denial of his Rule 56(f) motion. For purposes of appellate review, a district court's discovery ruling should not be overturned unless the district court abused its discretion and that abuse of discretion resulted in substantial prejudice. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir.1992); *see also Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir.1989) ("It is well established, however, that the scope of discovery is within the sound discretion of the trial court."). Moreover, in the discovery context we evaluate the exercise of a district court's discretion against five factors articulated in *Plott v. General Motors Corp., Packard Electric Division:* (1)

when the appellant learned of the desired discovery topic; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests. 71 F.3d 1190, 1196–97 (6th Cir.1995).

## A. The Denial of the Motion to Extend Discovery

■ Mallory's attorney initiated minimal discovery and he waited over a month after the close of discovery to file a motion to extend discovery. Nevertheless, Mallory contends that the district court abused its discretion in denying his motion to extend discovery. Mallory argues that he should have been allowed to engage in discovery because his only reason for delay was that he was awaiting the second right-to-sue letter from the EEOC, which did not arrive until after the discovery cutoff.

We reject that argument for two reasons. First, that explanation accounts for only half of Mallory's inaction. Mallory offers no excuse for his failure to conduct discovery on the racial discrimination and retaliation claims for which he had a right-to-sue letter. Second, the absence of a right-to-sue letter does not affect counsel's ability to *initiate* discovery. A right-to-sue letter is a condition precedent for a Title VII action, and is not jurisdictional. *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir.1998) (concluding that "a right-to-sue letter is merely a condition precedent, and not a jurisdictional requirement, to bringing a Title VII action"); *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir.2000) ("[T]he failure to obtain a right-to-sue letter is not a jurisdictional defect; rather the right-to-sue letter is a condition precedent."). As a condition precedent, a party

or the court can waive the right-to-sue letter requirement. *See Parry*, 236 F.3d at 309. So, counsel for Mallory could have served discovery requests and waited for appellees to object based on the lack of a right-to-sue letter. Also, since Mallory's lawyer did not plan on initiating additional discovery until after he received the second right-to-sue letter, he could have moved, at the outset, to stay discovery until the EEOC issued a letter. Mallory's lawyer selected neither of those alternatives, and instead chose idleness. *See generally Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir.2001) (noting that "a party suspends discovery at his own risk").

In addition to those reasons, weighing the district court's decision against the *Plott* factors confirms that the district court did not abuse its discretion in denying Mallory's request for an extension of discovery. Mallory learned of the desired discovery topic early in the case; the discovery period was sufficiently long; Mallory's attorney was dilatory in conducting discovery; and there is no evidence that defendants did not timely respond to Mallory's discovery requests. *See generally Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir.2001) ("Where the full period for pretrial discovery has run its course, a party should generally be precluded from reopening discovery months after it has closed in a last-ditch attempt to salvage a deficient claim or defense."); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir.2001) (holding that the district court did not abuse its discretion in denying a motion for further discovery where the discovery period lasted over a year and where the plaintiff waited until three months before trial to request additional discovery). With respect to the second *Plott* factor, while more discovery may well have helped Mallory avoid summary

judgment, possibly through developing an alternative theory of the case, such as direct evidence of discrimination or mixed motive discrimination, or through providing reliable evidence of similarly situated employees, that ground is too speculative and too weak to overcome the other four factors here. Consequently, we conclude that the district court did not abuse its discretion in denying Mallory's discovery motion.

## B. The Denial of the Rule 56(f) Motion

■ Mallory next argues that the district court abused its discretion in denying his Rule 56(f) motion. Mallory contends that the denial of this motion was effectively a dismissal of his case and that such an extreme sanction for a discovery issue constituted an abuse of discretion. That argument fails.

Rule 56(f) protects parties that cannot, for valid reasons, sufficiently oppose a motion for summary judgment. *See* 10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2740, at 397 (3d ed.1998). Specifically, the rule provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f). Court after court has made clear that the protection that Rule 56(f) provides is not intended to shield counsel who were dilatory in conducting discovery. *See, e.g., Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 732 (6th Cir.1996) ("Rule 56(f) is not a substitute for diligently pursuing discovery."); *York v. Tenn. Crushed Stone Ass'n,* 684 F.2d 360, 363 (6th Cir.1982) (affirming the district court's denial of a Rule 56(f) motion where the plaintiff had ample opportunity for discovery).[1] Thus, we pay special attention to the fourth *Plott* factor, whether counsel was dilatory, in the Rule 56(f) context. Ultimately, the same *Plott* analysis as used above applies to the district court's denial of the Rule 56(f) motion. Thus, we conclude that the district court did not abuse its discretion.

■ Finally, we are unpersuaded by the two cases upon which Mallory relies for the proposition that dismissals should rarely be used as sanctions for discovery abuses. In those cases, the district court punished a plaintiff's violation of court discovery orders by dismissing the complaint. *See, e.g., Coleman v. Am. Red Cross,* 23 F.3d 1091, 1096 (6th Cir.1994) (overruling the dismissal of a complaint based on plaintiff's counsel's violation of a protective order); *Taylor v. Medtronics, Inc.,* 861 F.2d 980, 987 (6th Cir.1988) (upholding a sanction for plaintiff's counsel's deliberate and indifferent disregard for discovery orders regarding the scheduling of a deposition). Here, the Rule 56(f) denial was not an outright dismissal nor was it a punishment for abusive discovery practices. Rather, it was a consequence of Mallory's lawyer's inaction that ultimately resulted in an adverse summary judgment. In other words, regardless of its effect, the district court's denial of the Rule 56(f) motion was not a sanction for discovery abuses. Thus, we agree that the district court did

---

1. *See also, e.g., Beattie,* 254 F.3d at 606; *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 921 (9th Cir.1997); *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 92–93 (1st Cir.1996); *Conkle v. Jeong,* 73 F.3d 909, 914 (9th Cir.1995); *Price v. Gen. Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991).

not abuse its discretion in denying Mallory's Rule 56(f) motion.

## III.

Mallory's final basis for appeal is his contention that the district court erred in entering summary judgment against his retaliation and discrimination claims. First, Mallory contends that his suspension and demotion claim should not have failed for lack of evidence of more favorable treatment to similarly situated non-minorities. Appellees oppose Mallory's argument and additionally argue that Mallory failed to state a *prima facie* case because he was not qualified for promotion to lieutenant in the first place. Second, Mallory argues that he satisfied the causation element of the retaliation claim because temporal proximity alone suffices to prove causation here. Third and last, Mallory argues that he satisfied the adverse employment action element of his retaliation and discrimination claims because, when taken in aggregate, NCI's treatment of him after his reinstatement was an adverse employment action. Despite the fact that Mallory may well have been discriminated against, none of those arguments prevail and he fails to make out a *prima facie* case of discrimination.

### A. Standard of Review

An appellate court reviews a district court's grant of summary judgment *de novo. Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.,* 249 F.3d 450, 453 (6th Cir.2001); *Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 149 (6th Cir.1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(c); *see also Putnam Pit, Inc. v. City of Cookeville, Tenn.,* 221 F.3d 834, 839 (6th Cir.2000). Courts look to substantive law in deciding which facts are "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a dispute over a factual issue is "genuine," courts ascertain whether the evidence would permit a reasonable jury to return a verdict for the nonmoving party, and, if it would, then summary judgment is inappropriate. *Id.* Moreover, a court should review all of the evidence in the record in making the determination of whether facts are "material" and "genuine." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968))). And, in making that review of the whole record, the court must disregard "all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (discussing the standard for judgment as a matter of law in the context of a Rule 50 motion notwithstanding the verdict).

Ultimately, summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Also,

where, as here, the party without the burden of proof at trial moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

**B. Elements of Retaliation and Discrimination *Prima Facie* Cases.**

Mallory's only challenges to the entry of summary judgment are to the district court's conclusions that he did not make out *prima facie* retaliation and discrimination claims under Title VII. Before examining Mallory's appeal in detail, it is necessary to set out the elements of the two relevant *prima facie* tests.

■ To establish a *prima facie* case for retaliation, a plaintiff must demonstrate four elements:

(1) she engaged in activity protected by Title VII;

(2) this exercise of protected rights was known to defendant;

(3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or persuasive retaliatory harassment by a supervisor; and

(4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000) (emphasis omitted), *modifying Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990).

■ To establish a *prima facie* case for race discrimination in employment a plaintiff must establish four elements: (1) he or she is a member of the protected class; (2) he or she is qualified for his or her job; (3)

he or she suffered an adverse employment action; and (4) he or she was treated differently from a similarly situated person outside of the protected class. *See Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 402–03 (6th Cir.1999); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

**C. Summary Judgment on the Suspension and Demotion Discrimination Claims Based on the Lack of Evidence of Similarly Situated Non–Minority Persons**

■ The district court dismissed Mallory's suspension and demotion discrimination claims because Mallory was unable to provide evidence that similarly situated non-minority persons were treated more favorably. Mallory identifies three non-minority NCI employees, Corrections Officer Don Hawkes, Captain Klein Adkins, and Lieutenant E.G. Thomas, who were disciplined less severely than he was for the use of excessive force. The district court rejected that argument. It concluded that Hawkes was not similarly situated because he was a lower rank than Mallory and because, unlike Mallory, no incident report was filed against him. *See generally Mitchell,* 964 F.2d at 583 ("It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated *in all respects.*"). The district court also rejected evidence relating to Adkins and Thomas because it was hearsay and because Mallory admitted in his deposition to not having personal knowledge of those events.

On appeal, Mallory argues primarily that the Hawkes evidence should suffice because it demonstrates widespread racial discrimination that included non-superviso-

ry persons. This argument, while perhaps reflective of reality, is not a part of the *prima facie* test. Rather, as *Mitchell* instructs, a plaintiff must identify a person who has the same supervisor, who was subject to the same standards of conduct, and who engaged in the same conduct without differentiating or mitigating circumstances.[2] *Id.* at 583. As a corrections officer, Hawkes had a different supervisor and was governed in some part by different standards of conduct, and therefore he is not a similarly situated person.

Mallory's other argument is that he should be allowed to cure the hearsay problems with his evidence regarding Adkins and Thomas through additional discovery. That argument does not challenge the entry of summary judgment as much as it attempts to reargue the discovery rulings. Notably, Mallory implicitly concedes that the rejection of this hearsay evidence was proper. But, because the district court did not abuse its discretion in denying the discovery orders, it properly excluded the hearsay evidence at summary judgment. *See Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999) ("Hearsay evidence may not be considered on summary judgment."); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment."); *see also* FED. R. CIV. P. 56(e).

For those reasons, Mallory's challenges to summary judgment against his suspension and demotion claim should be rejected. Nevertheless, appellees submit an additional argument for why this Court should reject Mallory's suspension and de-

motion claim. Appellees contend that Mallory cannot satisfy the second element of an employment discrimination *prima facie* claim because he was not qualified for his position. Appellees assert that because Mallory used excessive force, it is clear that he was not qualified for the rank of lieutenant. That argument quickly fails. Mallory successfully served as a lieutenant for approximately four months before the Irvin incident. If nothing else, that four-month period of successful service creates a genuine issue of material fact as to Mallory's qualifications. Consequently, summary judgment on that basis is inappropriate.

**D. Summary Judgment on the Retaliation Claim Because Here Temporal Proximity Does Not Establish Causation**

Mallory next challenges the district court's conclusion that the causal connection element of the retaliation *prima facie* case was not satisfied. Mallory's principal argument is that although he filed his EEOC charge in May 1997, when he returned to work in December 1997, he immediately experienced retaliation. For that reason, Mallory contends that the temporal proximity between his filing of the EEOC charge and the retaliation that he experienced satisfies the causal connection requirement. Mallory's argument fails.

Mallory is correct that the fact that retaliation occurs "very close" in time after a person engages in conduct protected by Title VII may suffice to satisfy the causal connection requirement. *See Clark Coun-*

---

**2.** The *Mitchell* holding was criticized by Judge Jones in his dissent wherein he aptly noted that the similarly situated test should measure the similarity of employees' conduct and not their occupational status. *Id.* at 586–87. Moreover, requiring that two employees be similarly situated in *all respects* as opposed to in *all relevant respects* arguably casts too wide a net because it has the potential to foreclose comparison with otherwise similarly situated employees due to irrelevant distinctions in the employees' job duties.

*ty Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Moreover, although this Circuit acknowledged that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support [the causal connection]," that same court went on to note that "we do not hesitate to say that [those circumstances] have not been presented in this case." *Nguyen v. City of Cleveland,* 229 F.3d 559, 567 (6th Cir. 2000). The *Nguyen* court did not explain its reasoning for its conclusion. But, a reason for inferring a causal connection from retaliation that occurs very shortly after a protected Title VII activity is that in such a short period of time little other than the protected activity could motivate the retaliation. Consequently, in those instances, it is safe to conclude that the sole cause of the adverse employment action was the only aspect that changed – engaging in protected Title VII activities.

Based on that assessment of the law, this is not a case where temporal proximity alone should suffice to satisfy the causal connection requirement. First, temporal proximity alone is inconclusive here. When Mallory filed his first EEOC charge, he was suspended from work. Thus, he experienced no immediate adverse employment action as a result of filing the charge. But, even if this Court were to consider Mallory's return to work six months later as the starting point for the temporal proximity determination, temporal proximity still should not suffice. Too many variables changed in those six months to conclude that the allegedly adverse employment actions were caused 1078. Finally, it makes little sense for this Court to announce a holding broader (encompassing discrimination claims as well as retaliation claims) than *Moore* on such an underdeveloped record. For those reasons, we reject Mallory's final basis for appeal.

\* Editor's Note: Opinion withdrawn and super-

## IV.

In sum, Mallory does not present any valid argument on appeal. For that reason, we **AFFIRM** the orders and judgment of the district court.