NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0464n.06

No. 08-3262

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 06, 2009**

LEONARD GREEN, Clerk

TERESA BATUYONG,                    )
                                    )
        Plaintiff-Appellant,        )       ON APPEAL FROM THE
                                    )       UNITED STATES DISTRICT
        v.                          )       C O U R T   F O R   T H E
                                    )       NORTHERN DISTRICT OF
ROBERT GATES, SECRETARY OF          )       OHIO
DEPARTMENT OF DEFENSE, and DEFENSE  )
FINANCE AND ACCOUNTING SERVICE,     )
                                    )
        Defendants-Appellees.       )

BEFORE: McKEAGUE and WHITE, Circuit Judges, and MARBLEY,* District Judge.

**WHITE, Circuit Judge.**    In this employment discrimination action, Plaintiff Teresa

Batuyong appeals the district court's grant of summary judgment to Defendants on her claims of race

discrimination, retaliation, and hostile work environment. We affirm.

**I**

Batuyong, a federal civilian employee, requested 240 hours of Advance Sick Leave (ASL)

for time she would be off work following elective knee surgery that would take place on June 4,

2004. Batuyong's first-line supervisor, Jeffrey King, recommended that her ASL request be

approved. Batuyong's second-line supervisor, Jane Cironi, sought assistance from Human Resources

---

*The Honorable Algenon L. Marbley, United States District Judge for the Southern District
of Ohio, sitting by designation.

regarding Batuyong's request for ASL, and Human Resources advised Cironi to deny the request because of insufficient medical documentation. Cironi accordingly denied Batuyong's request for ASL, on the basis that Batuyong supplied insufficient medical documentation. Batuyong's physicians provided further documentation, but Cironi, on HR's advice, continued to deem it insufficient and continued to deny the ASL request. As a result, Batuyong received no pay during the month of July 2004, and her time records reflected Leave Without Pay (LWOP) and Away without Leave (AWOL). Batuyong sought assistance from her Union.

In August, 2004, Cironi reversed herself and approved Batuyong's ASL request. Batuyong received compensation for her time off work following knee surgery, and her payroll records were changed from LWOP and AWOL designations to ASL. Batuyong returned to work on August 9, 2004.

Batuyong's complaint alleged that Defendants' initial denials of her ASL request and making her "jump through hoops" were the result of race discrimination (Filipino), and in retaliation for her engaging in protected activity. Batuyong also alleged that she was subjected to a hostile work environment.

This court reviews the district court's grant of summary judgment de novo. *Tepper v. Potter*, 505 F.3d 508, 513 (6th Cir. 2007). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, a court must construe the evidence and all

reasonable inferences therefrom in favor of the non-moving party. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

As pertinent to this race discrimination case, Batuyong must establish as a *prima facie* case: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was treated differently than similarly-situated employees who were not members of the protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

"To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar 'in all of the *relevant* aspects.'" *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber, Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original)).

## A

Only the fourth *prima facie* case element was at issue below. Defendants argued that Batuyong did not establish that she was treated differently than similarly-situated employees outside of the protected class. The district court agreed and, beyond that, concluded that even if Batuyong had established that fourth element, she failed to show that Defendants' articulated reasons for the adverse employment actions were pretextual.

We agree with the district court that Batuyong did not establish the fourth *prima facie* element, but not for the same reasons. The district court found:

> In this case, the parties do not dispute that the Plaintiff has satisfied the first three elements of the prima facie race discrimination case. First, Plaintiff Batuyong is a

member of a protected class under Title VII because she is Filipino-American. Second, the Plaintiff was qualified for her job and has received positive job evaluations since she began working for DFAS in 1995. Third, the Plaintiff suffered an adverse employment action when she was initially denied sick leave and placed on Leave Without Pay (LWOP) and Absent Without Leave (AWOL) status, resulting in a temporary reduction in pay, benefits, and health insurance. The Defendants claim that Plaintiff Batuyong has failed to prove the fourth element of her prima facie case, however, because she has not shown that any DFAS employees outside of the protected class were treated more favorably with regard to advance sick leave requests by supervisors King or Cironi. In response, the Plaintiff argues that she was "treated differently than *any* other employee, similarly situated or not, who had requested ASL" and that no other employee "was required to jump the hurdles created specifically for Teresa by King/Cironi." [In a footnote here, the district court stated, "The Plaintiff alleges that she alone was required to: "complete a Department of Labor FMLA (Family Medical Leave Act) form; sign a waiver to allow a supervisor and/or a supervisor's chosen medical representative to speak directly with the employee's treating physician; and to make employee's treating physician review a position description of the employee in order to evaluate it and compare it with the employee's work restrictions."]

A similarly situated employee is one who has the same supervisor, was subject to the same standards of conduct, and engaged in "nearly identical" conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's response. *Mallory v. Noble Corr. Inst.*, 45 Fed. Appx. 463, 471-72 (6th Cir. 2002); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). The Sixth Circuit has instructed that courts "should not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (holding that employees were similarly situated when charged with the same duties and had the same supervisor). . . .

This Court finds that the Plaintiff has failed to prove that she was treated differently than similarly situated members outside of the protected class. An individual similarly situated to Plaintiff Batuyong would be a DFAS employee who was [sic] applied for ASL in the same relevant time period and failed to submit the proper medical documentation, yet whose request was still granted by Cironi or King. The record indicates that no such person exists.

In a footnote the district court noted:

Cironi, the approving official in this case, had apparently never dealt with an ASL request before Batuyong's application, which renders the existence of similarly situated employees under her supervision more difficult to find. The Plaintiff, however, has not presented any evidence showing that Cironi has granted ASL leave to an employee with improper medical documentation since her interactions with Batuyong either.

**B**

*Perry*, on which the district court relied, cites and quotes *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), in which this court noted:

> to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. [*Perry*, 209 F.3d at 601.]

In *Ercegovich v. Goodyear Tire & Rubber, Co.*, 154 F.3d 344, 352 (6th Cir. 1998), this court noted

that although *Mitchell*

> appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of employment, *Mitchell* has not been so narrowly construed. . . . *Mitchell* itself only relied on those factors relevant to the factual context in which the *Mitchell* case arose–an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment. . . . Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee.

Under *Ercegovich*, Defendants' argument that there can be no other similarly situated employees given that Cironi had not denied any other ASL requests (Batuyong's request being the first Cironi was responsible for approving/denying) must fail.

*Ercegovich* supports Batuyong's argument on appeal that the district court applied an overly restrictive test to the "similarly situated" *prima facie* element--"Defendants and the district court would have this court believe that because there was no other DFAS employee outside the protected class granted or denied ASL by Cironi or King, no discrimination occurred in this case."

However, even assuming that the district court applied an overly restrictive test by requiring that Batuyong come forward with evidence of employees *supervised by Cironi or King*, we conclude it reached the right result because Batuyong presented no evidence that any employee engaged in conduct like hers.

The affidavits Batuyong submitted below supported her argument that no other employees were required to complete an FMLA form or asked that their physician detail the job duties they could not perform. However, Batuyong presented no evidence that any of these other employees' initial request for ASL was unaccompanied by proper medical documentation, or that any of them first submitted medical documentation two weeks after an elective surgery. Batuyong thus failed to present evidence from which a reasonable fact-finder could conclude that any of the other employees she cited had engaged in conduct similar, much less nearly identical, to hers. Her claim fails.

### C - **Batuyong's remaining arguments under Issue I**

Batuyong's argument that the medical documentation she submitted to Defendants initially was no different than the documentation she later submitted (under which she was granted ASL), go to pretext; thus, we do not address it beyond noting that the record does not support the argument. As detailed by the district court, the initial medical documentation Batuyong provided Defendants

(on June 18, 2004) was from Dr. James Walker, her surgeon, and stated that Batuyong had undergone knee surgery on June 4, 2004 and that she could tentatively return to work on July 19, 2004. Dr. Walker's subsequent note, submitted to Defendants on July 7, 2004, included Batuyong's physical restrictions, including instructions not to drive, bend, or lift. Dr. Walker's third note, submitted to Defendants on July 16, 2004, stated that Batuyong was unable to perform her work duties. Batuyong also provided Defendants a letter from Dr. Matthew Faiman dated July 16, 2004, which stated that:

> I have seen and examined Teresa Batuyong on 7/16/2004. She is under extremely high stress and is suffering mental anguish due to her circumstances surrounding her working environment. This unusual amount of tension has resulted in very high blood pressure which is difficult to control despite use of medication. Her situation at work needs to be resolved soon and in a timely fashion. It is impacting her physical and mental health adversely.

Cironi approved Batuyong's ASL request on August 4, 2004.

In sum, the first note from Dr. Walker said nothing about physical restrictions or that Batuyong was unable to perform her work duties. The second note said Batuyong could not drive, bend or lift, but did not address directly whether she could perform her work duties. Thus, this argument fails.

Batuyong argues that the district court erred in finding that Cironi changed her mind and approved her request for ASL because Cironi was "exhausted." We question whether the district court's use of the word exhausted was intended to be a finding of fact. In any event, regardless of the reason for Cironi's about-face approval of Batuyong's ASL request, the fact that Batuyong failed to establish a *prima facie* case of racial discrimination remains.

**II**

Batuyong also challenges the dismissal of her retaliation claim. In order to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in activity protected under Title VII; (2) the defendant knew that she engaged in the protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal connection existed between the protected activity and the adverse employment action. *Randolph v. Ohio Dep't. of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006).

We conclude that Batuyong failed to present evidence that she engaged in protected activity that was causally connected to Defendants' denial of her ASL request. Although Batuyong filed one other EEO claim, in 1999, against a different supervisor, she presented no evidence that the 1999 claim was causally connected to Defendants' actions in the summer of 2004.

Batuyong attested in her affidavit that she had filed numerous grievances at work and prevailed in all of them with the exception of the evaluation-ratings grievance that remained pending. Batuyong further attested that she discussed at least some of her grievances with both King and Cironi before May 2004. However, Batuyong presented no evidence that any of her grievances, including her last grievance filed in July 2003 over a performance evaluation, were related to race discrimination.

An employer may not discriminate against an employee because the employee has opposed unlawful employment practices, or made a charge, or participated in an investigation, proceeding or

hearing *related to Title VII. EEOC v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir. 1993) (emphasis added); *see also Kodl v. Bd. of Educ., Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (work grievances not protected activity unless related to discrimination).

Because Batuyong did not show that any of her grievances were related to race discrimination, we conclude that summary judgment of this retaliation claim was proper. *Id.*

### III

Batuyong asserts the district court improperly dismissed her hostile environment claim. We disagree.

"In order to establish a hostile work environment claim, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). The applicable test has both objective and subjective components:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

### A

Batuyong's appellate brief's legal argument section in support of this claim is general and conclusory, and thus constitutes a waiver. *See, e.g., Chandler v. Vulcan Materials Co.*, 81 F. App'x

538, 542 (6th Cir. 2008) (noting that employees waived claims of sexually hostile work environment by not explaining on appeal how district court erred in granting summary judgment for employer).

**B**

Even if Batuyong had not waived this issue, we conclude summary judgment was properly granted. Batuyong alleged below that approximately four incidents occurred before her sick leave. Batuyong asserted that on at least two occasions, King "raised his voice, inappropriately, became verbally abusive, and chastised me in front of others." One of these incidents took place around May 27, 2004, while Batuyong was working on the Asian/Pacific American Heritage Program, an employer-sponsored event. This is on or about the same date that Batuyong advised King that she would be requesting ASL. Batuyong's affidavit, submitted below, additionally states that in "early 2004" King refused to allow her to attend a conference of the Federal Asian/Pacific American Council, and denied her travel expenses for a U.S.D.A. National Training Conference on Civil Rights, at which she was invited to speak.

The district court concluded that "the harassment experienced by the Plaintiff is not sufficiently severe or pervasive" to have constituted a hostile work environment:

> Plaintiff Batuyong complains of various incidents in which she was criticized by her supervisors, resulting in feelings of depression and humiliation. While potentially upsetting, this conduct occurred in isolated incidents, thus failing to be pervasive, and was not so objectively severe that it actually changed the terms and condition[s] of her employment.
>
> Further, the Plaintiff complains that the way in which her ASL requests were handled created a hostile work environment, resulting in physical and emotional injury during the period in which she was recovering from work. During that time, however, the Plaintiff was away from work and thus her work performance was not affected.

Further, she received a high performance evaluation only days after returning. Plaintiff Batuyong makes some claim as to residual harassment that she experienced upon return to the workplace in August 2004, but the allegations are vague and, even if believed, do not amount to objectively severe or pervasive conduct in violation of Title VII.

Batuyong presented evidence below from which a reasonable fact finder could conclude that she suffered mentally and physically as a result of Cironi's denials of her ASL request during the summer of 2004. We note that Batuyong does not challenge the district court's determination that Defendants' treatment of her while she was off work (June-August 9, 2004) is not viable under a hostile environment theory because she can not show that her work performance was affected during that period. We further note that Batuyong does not challenge the district court's finding that the alleged harassment she encountered after she returned to work on August 9, 2004, did not constitute objectively severe or pervasive conduct in violation of Title VII. We are thus left with only the approximately four incidents described above, which occurred before Cironi's initial denials of Batuyong's ASL request (pre-June 2004). Although these incidents clearly upset Batuyong, she did not present evidence that these incidents were severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. *Harris,* 510 U.S. at 21-22.

We conclude that the district court's grant of summary judgment of Batuyong's hostile environment claim was proper.

Affirmed.