NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0262n.06

No. 09-3356

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 28, 2010
LEONARD GREEN, Clerk

BERTHA STEELE,                                )
                                              )
    Plaintiff-Appellant,              )
                                              )
v.                                            )   On Appeal from the United States
                                              )   District Court for the Northern
                                              )   District of Ohio
CITY OF CLEVELAND, WILLIAM VANVERTH,          )
TODD STAIMPEL, ROBERT MILES, JOHN DOE 1,      )
JOHN DOE 2, and JOHN DOE 3,                    )
                                              )
    Defendants-Appellees.             )

Before:      GUY, BOGGS, and SUTTON, Circuit Judges.

        BOGGS, Circuit Judge.  On May 8, 2007, Aaron Steele ("Steele") was shot to death by City of Cleveland police officers during a traffic stop.  On May 6, 2008, his mother, acting through counsel, filed an action under 42 U.S.C. § 1983, alleging that the officers used excessive force in violation of the Fourth Amendment and that the City of Cleveland failed to adequately train them in the use of deadly force.  The complaint also asserted ancillary state-law tort claims.  On March 4, 2009, the district court granted summary judgment to all defendants.  For the reasons given below, we affirm.

**BACKGROUND**

**A. Allegations in the Complaint**

According to the complaint (which was not verified), on the afternoon of May 8, 2007, Steele was driving on a Cleveland thoroughfare in a vehicle with expired license plates, playing music loudly. Six police officers – William VanVerth, Todd Staimpel, Robert Miles, and three unnamed "John Does" – initiated a traffic stop. Steele produced a valid driver's license. The officers ordered him to exit the vehicle; however, "as [the] police officers were escorting [Steele] from the vehicle, [he] broke away from [the] police officers . . . [and] was shot sixteen times." In particular, Steele "sustained twelve gunshot wounds to the posterior right and left trunk, two in the neck, one in the left groin and one in the left thigh." He was transported to a nearby hospital, where he was pronounced dead.

## B. Defendants' Motion for Summary Judgment

On August 1, 2008, in accordance with the magistrate judge's scheduling order, defendants filed a motion for summary judgment, supported by the affidavits of VanVerth, Staimpel and Miles. According to the officers' affidavits, VanVerth and Staimpel stopped Steele for driving with expired license plates. At that point, the officers' story diverges from the complaint's version of events.

The officers claim that, as VanVerth and Staimpel approached the car, Steele "started sliding his hand down his right side," disobeying their repeated orders to "keep his hands in plain view." VanVerth, "concerned about [Steele's] movements," ordered him out of the car. Steele refused. VanVerth attempted to "escort [him] from the vehicle," at which point Steele "broke away from [VanVerth's] grasp" and again attempted to "move his hand down his right side."

At that point, Miles, who had been alerted to the impending traffic stop via police radio, arrived on the scene. He shouted to the other officers that, according to police records, Steele "had previous weapons charges." VanVerth then drew his service weapon and ordered Steele "numerous times" to exit the vehicle. Steele initially refused to comply, but "finally stood up in the doorway of the driver's side of the vehicle." The three officers ordered Steele to get down on the ground "50 or 60 times," but Steele did not comply. Steele then "dove back into the vehicle," apparently "reaching for something." At that point, VanVerth saw Steele "grab [a] gun."

Staimpel "dove into the vehicle after [Steele]" and wrestled with Steele for control of the gun, during which time the gun was at least briefly pointed "directly at" VanVerth. According to Staimpel, "Steele had more control of the gun" during this time than Staimpel did. "[I]n fear of imminent danger" and "believing Steele intended to fire his weapon," each of the three officers fired at Steele, who then fell out of the car and into the street.[1] After Steele was incapacitated, Miles radioed for an ambulance.

## C. Subsequent Procedural Developments

On August 1, 2008, at the same time defendants filed their summary-judgment motion, they filed a motion to stay discovery pending resolution of their qualified-immunity defense. Plaintiff did not oppose the motion; however, the district court never ruled on it.

Plaintiff twice moved to extend the deadline for filing her brief in opposition to summary judgment, first because plaintiff's counsel was on trial in an unrelated case, and then

---

[1] The affidavits are silent regarding how many bullets were fired in total.

because plaintiff's counsel "ha[d] been involved in a lengthy deposition." The district court granted both extensions; plaintiff nonetheless failed to file her brief as scheduled. On November 10, 2008, plaintiff moved the court for retroactive leave to file her untimely brief; she attributed the unauthorized delay to the fact that counsel "ha[d] actively been searching for witnesses."

On the same date, plaintiff filed a motion styled "Motion to Allow Depositions Pending the Court's Ruling on Defendants' Motion for Summary Judgment." This motion invoked no particular Federal Rule of Civil Procedure and was not accompanied by an affidavit. In this filing, plaintiff made several unsupported claims about the existence of evidence supporting her version of the story:

> At the time of [Steele's] wrongful death, Plaintiff obtained statements from witnesses that indicated that [Steele] was unarmed and attempting to display his driver's license while at gunpoint. After subsequent inquiry by Cleveland Police, some of the critical details provided were unclear and contradicted. Plaintiff asserts that those changes were due to undue pressure exerted by the Cleveland Police and its representatives.
>
> Moreover, the Coroner's Verdict, which is attached to Plaintiff's Brief in Opposition, provides uncontroverted evidence that Decedent was shot in excess of 12 times to his back and shoulder area, by multiple guns.[2] This evidence, in and of itself, creates a question of fact as to the actions of the police and the necessity of deadly force.
>
> Accordingly, in order to fully provide the Court with all supporting statements and evidence relative to the issues of fact, Plaintiff seeks the Court's permission to schedule the depositions under oath of the following witnesses:
>
> Tabri Baker
> Jennifer Winborn
> Kerry Kay Mae Bailey
> Harvey West

---

[2] The Coroner's Verdict was *not* in fact attached to plaintiff's opposition brief, and, indeed, so far as we can tell, does not appear anywhere in the record.

> Dalontai Pond
> Deputy Coroner Erica Armstrong

Pending the completion of this discovery, Plaintiff requests the right to supplement her Response in Opposition to Defendants' Motion for Summary Judgment.

On November 13, 2008, the district court granted plaintiff's motion to file her belated opposition brief, and plaintiff did so that same day. In her opposition brief, plaintiff asserted that the officers' affidavits were "inconsisten[t] . . . with [the stories of] other witnesses . . . , as well as [with] the forensics." However, plaintiff's filing contained no citations to the record – and, indeed, the record was barren of any such evidence. Perhaps recognizing as much, plaintiff also asserted in her opposition brief that "absent discovery proceedings and specifically, the sworn testimony of eyewitnesses and the Coroner, establishing the nature and location of the injuries, any ruling on Summary Judgment is premature."

Defendants filed their reply memorandum on December 1, 2008. In it, they addressed plaintiff's insistence that further discovery was needed:

> Plaintiff asserts . . . that she needs further discovery. However, Plaintiff's response [to defendants' summary-judgment motion] indicates that she waited over two months after the court ordered response to summary judgment deadline in order to search for witnesses. Even with the additional time, all Plaintiff supplies in her response are mere allegations in pleadings, which is insufficient to support opposition to summary judgment.
>
> Plaintiff has yet to provide Defendants with any information within her control. Defendants turned over the City of Cleveland investigative files as required by the Court in initial disclosures on August 15, 2008. Plaintiff has yet to provide the same disclosures as ordered by this Court. Despite a written request, Plaintiff did not respond nor turn over initial disclosures. . . .
>
> Plaintiff has further failed to support her request for discovery with an affidavit as required by Fed. Rule 56(f). Plaintiff's request seeks to deny Defendants the benefits

of qualified immunity (freedom from the burden of litigation) without providing this Court any evidence or affidavit indicating the specific discovery sought, the evidence Plaintiff believes will be obtained, or the basis for those beliefs. . . .

On December 3, 2008, notwithstanding defendants' objection to further discovery, the district court granted plaintiff's "Motion to Allow Depositions Pending the Court's Ruling on Defendants' Motion for Summary Judgment." As far as the record reflects, however, plaintiff never actually conducted any such depositions; at minimum, she took no steps to supplement the record or her memorandum of law.

On March 4, 2009, the district court issued an order granting defendants' motion for summary judgment in its entirety. This appeal timely followed.

**STANDARD OF REVIEW**

We review the district court's denial of summary judgment de novo, using the same Rule 56(c) standard as the district court. *Moldowan v. City of Warren*, 578 F.3d 351, 373 (6th Cir. 2009). At the summary-judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried this burden, the non-moving party "must do more than rely merely on the allegations of her pleadings . . . ; she is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(e)(2)).

Where a party "claim[s] that summary judgment was prematurely entered because additional discovery was needed," we review the district court's refusal to hold the summary-judgment motion in abeyance pending such additional discovery for abuse of discretion. *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996); *see also Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th Cir. 2009).

## DISCUSSION

### A. Plaintiff's Entitlement to Additional Discovery

Federal Rule of Civil Procedure 56(c)(1) provides that "a party may move for summary judgment *at any time* until 30 days after the close of all discovery . . . ." (emphasis added). If the non-moving party is unprepared to respond at the time the movant files for summary judgment, Rule 56(f) provides as follows:

> If a party opposing the motion *shows by affidavit* that, *for specified reasons*, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . . .

(emphases added).

In this case, plaintiff responded to defendants' summary-judgment motion with her "Motion to Allow Depositions Pending the Court's Ruling on Defendants' Motion for Summary Judgment." As described above, this motion indicated that plaintiff needed time to depose six individuals "in order to fully provide the Court with all supporting statements and evidence relative to the issues of fact." Although this motion did not mention Rule 56(f) – or indeed, any other Rule

of Civil Procedure – it was clearly *intended* to serve the purpose of a Rule 56(f) motion for additional discovery in advance of summary judgment.

However, plaintiff's motion did not provide a supporting affidavit of any kind – let alone one "stat[ing] with '. . . precision the materials [she] hope[d] to obtain with further discovery, and exactly how [she] expect[ed] those materials would help [her] in opposing summary judgment,'" as Rule 56(f) requires. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)). Accordingly, the district court arguably was required to deny the motion for additional discovery outright. *See ibid.* ("In the absence of a sufficient [Rule 56(f)] affidavit, there is no justification for the district court's determination that a motion for summary judgment would be premature . . . .").[3]

Nevertheless, the district court granted plaintiff's motion, however styled. Even so, during the three months between that ruling and the district court's decision on defendants' summary-judgment motion, plaintiff apparently failed to conduct any of the additional discovery she had sought. Plaintiff now argues, in effect, that the district court further erred by refusing to hold defendants' motion in abeyance until she completed – on her own unspecified schedule – the

---

[3] Furthermore, "[b]eyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court . . . why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Thus, even if plaintiff *had* made her motion in the form of an affidavit, the district court would not have abused its discretion in denying additional discovery, as plaintiff made no showing why she had been unable to depose these alleged witnesses – or even obtain affidavits from them – in the six months that had elapsed since the lawsuit was filed (and in the eighteen months that had elapsed since Steele's death). "Court after court has made clear that the protection that Rule 56(f) provides is not intended to shield counsel who were dilatory in conducting discovery." *Mallory v. Noble Corr. Inst.*, 45 F. App'x 463, 469 (6th Cir. 2002).

discovery to which she was not lawfully entitled in the first place. We have clearly held, however, that a Rule 56(f) affidavit is "necessary in order to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery." *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 384 (6th Cir. 2008) (internal quotation marks omitted); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) ("Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." (quoting *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986))).

## B. Defendants' Entitlement to Summary Judgment on the Merits

Because the district court did not err by declining to postpone resolution of defendants' summary-judgment motion, we must consider whether defendants were entitled to summary judgment based on the record that was before the district court. As she did below, plaintiff argues that a genuine issue of material fact precludes summary judgment because unnamed eyewitnesses claim that Steele was unarmed and forensic evidence outside the record shows that Steele was shot primarily in the back. However, as the district court correctly noted, these bare assertions are supported by no record evidence. Because plaintiff "has failed to carry [her] burden by adducing *evidence* refuting the detectives' account of the circumstances they confronted," no genuine issue of material fact exists. *Chappell*, 585 F.3d at 912 (emphasis added).[4]

---

[4] We note, once again, that plaintiff's complaint was not verified. *Cf. Turney v. Catholic Health Initiatives*, 35 F. App'x 166, 168 (6th Cir. 2002) (noting that "a party's *verified* complaint

Of course, that alone does not entitle defendants to summary judgment, as a grant of summary judgment requires *both* the absence of a genuine issue of material fact *and* the moving party's "entitle[ment] to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On defendants' version of events, however, we have little trouble concluding that they are so entitled.

Defendants have invoked qualified immunity, which "shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chappell*, 585 F.3d at 907 (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)). This defense "ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were []lawful." *Ibid.* When qualified immunity is asserted, the plaintiff bears the burden of showing that the defendants are not entitled to that defense. *Ibid.* Specifically, the plaintiff "must show both that, viewing the evidence in the light most favorable to her, a constitutional right was violated and that the right was clearly established at the time of the violation." *Ibid.*

Here, as the district court correctly concluded, the plaintiff has failed to show the violation of a constitutional right. The use of deadly force is objectively reasonable under the Fourth Amendment where "[an] officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see also Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 487 (6th Cir. 2007) ("[A]n officer may use deadly force whenever he or she, in the face of a rapidly evolving situation, has probable

_____

*may* be considered as evidence in establishing a genuine issue of material fact" (emphases added)). Further, plaintiff's claim that Steele was unarmed does not appear in her complaint at all.

- 10 -

cause to believe that a suspect poses a serious physical threat either to the police or members of the public."). Further, the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"; in other words, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Here, the sole evidence of record shows that Steele, in violation of the officers' repeated orders, dove suddenly into his car and reached for a gun. At the time the officers shot him, he was physically wrestling one of those officers for control of the weapon, and was winning.[5] During the struggle, the gun was pointed directly at another one of the officers. Under these circumstances, "it is apparent that if the [officers] had hesitated . . . , they would have been . . . vulnerable to serious or even fatal injury." *Chappell*, 585 F.3d at 911 (finding use of deadly force justified where suspect "was continuing to move quickly toward [officers] and had closed to within seven feet with [a serrated steak] knife held high"). It is clear, therefore, that the *Garner* standard for the use of deadly force was satisfied. While Steele's fate is certainly tragic, no Fourth Amendment violation occurred.[6]

---

[5] For what it is worth, plaintiff's own brief states (again, without any citation to the record) that Steele "was over 6 feet tall and weighed more than 300 pounds . . . ."

[6] Plaintiff appears to argue that even if *some* quantum of deadly force was justified under the circumstances, the sixteen gunshots allegedly fired at Steele were nevertheless excessive. However, we need not consider here whether an officer lawfully entitled to shoot to kill may nonetheless

Thus, as the district court concluded, the defendant officers are entitled to qualified immunity. *See Chappell*, 585 F.3d at 916 n.2 ("Because plaintiff has failed to make the requisite showing of the violation of a constitutional right, we need not address the second prong of the qualified immunity analysis and determine whether the asserted right was clearly established in a particularized sense at the time of the fatal shooting."). For the same reason, summary judgment was properly granted with respect to plaintiff's state-law claims. *See id.* at 916 n.3 ("Inasmuch as plaintiff has failed to demonstrate that defendants' conduct was objectively unreasonable [under the Fourth Amendment], it follows that she has also failed to demonstrate that defendants acted with 'malicious purpose, in bad faith, or in a wanton or reckless manner,' such as is required to avoid statutory immunity under [Ohio Revised Code § 2744.03(A)(6)(b)]."); *see also Cabaniss v. City of Riverside*, 231 F. App'x 407, 418 (6th Cir. 2007).

Finally, the district court also correctly held that the absence of a constitutional violation compelled the grant of summary judgment with respect to plaintiff's failure-to-train claim against the City. *See Cain v. Irvin*, 286 F. App'x 920, 928 (6th Cir. 2008) ("Without a constitutional violation, plaintiff's concomitant municipal liability claim fails as a matter of law." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))); *Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988) (stating that the "finding[] that a police officer inflicted no constitutional injury on a plaintiff is conclusive not only as to the officer's liability, but also as to the liability of the city" (citing *Heller*, 475 U.S. at 799)).

---

violate the Fourth Amendment by pulling the trigger too many times, as plaintiff's figure of sixteen bullets does not actually appear in the record.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.