**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0523n.06

**No. 10-1842**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| YOUSIF HERMIZ, as Personal Representative of the Estate of ARVIN HERMIZ, Deceased, | ) ) ) | **FILED** **_May 21, 2012_** LEONARD GREEN, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CITY OF SOUTHFIELD; OFFICER BLAKE MATATALL, | ) ) ) | |
| Defendants-Appellants. | ) | |

Before: MARTIN, KETHLEDGE, and COOK, Circuit Judges.

COOK, Circuit Judge. After Officer Blake Matatall's fatal shooting of Arvin Hermiz, Hermiz's estate sued the City of Southfield ("City") for failure to train and Matatall for unconstitutional use of deadly force, both under 42 U.S.C. § 1983. Invoking municipal and qualified immunity, the City and Matatall sought summary judgment against the estate, which the district court denied. The defendants challenge by interlocutory appeal the denial of qualified immunity for Matatall and request exercise of pendent appellate jurisdiction over the municipal-immunity issue. Because factual issues preclude granting qualified immunity to Matatall at the summary-judgment stage, we affirm the district court's denial of qualified immunity and decline to exercise appellate jurisdiction over the municipal-liability issue.

## I. Background

For the purposes of this interlocutory appeal, we "take, as given, the facts that the district court assumed when it denied summary judgment." *Johnson v. Jones*, 515 U.S. 304, 319 (1995). Where the district court does not specify which facts supported its denial of qualified immunity, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* at 319. To the extent the opacity in the district court's hearing and opinion compels such a review, we summarize the facts and draw inferences in favor of the non-movant. *See Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009).

On the night of September 27, 2007, Officer Matatall turned on his siren and emergency lights to flag down Hermiz's car for a traffic stop. According to Brandon Tucker, a front-seat passenger in Hermiz's car, Hermiz was driving normally at the time. Matatall's dashboard camera, which began recording thirty seconds before the activation of the lights, revealed no indications of erratic driving or excessive speeding.

After hesitating past several driveways, Hermiz slowly pulled into a parking lot. Matatall parked at the entrance side of the parking lot's driveway, leaving ample room for a car to pass on the exit side without striking his vehicle. Keeping his driver's door open, he then exited his vehicle without waiting to check whether Hermiz stopped, placing himself about three to eight feet away from the patrol car and somewhere in front of Hermiz's car. Meanwhile, Hermiz's car stopped for

about a second before turning around and heading back toward the entrance at about five to ten miles per hour. Tucker then observed Matatall "seconds" after Hermiz turned his car around, "very close to the vehicle." Though he believed that the car "was sort of headed in the same direction" toward the officer, he could not recall whether Matatall warned Hermiz to stop the car.

Seconds after the car turned around, Matatall fired three shots at Hermiz's car from about three or four feet away. The first passed through the windshield near the top of the steering wheel, and the second grazed the windshield post—both hitting Hermiz. The third traveled a lower path than the others, entering the dashboard. As the car rolled by, Matatall shot a fourth time—this time through the driver's-side window—hitting Hermiz again, but at a more lateral angle. The car continued to travel out of the parking lot, coming to a stop in another parking lot across the road. Though the police called for medical help, Hermiz died at the hospital.

Hermiz's estate sued the City and Matatall under 42 U.S.C. § 1983 and state law, contending that Matatall's shootings violated the Fourth Amendment's prohibition against unreasonable seizure by deadly force and that the City failed to train Matatall properly. The district court granted summary judgment with respect to the state claim, but denied it with respect to the City and Matatall, gleaning a material factual dispute "as to where the shots were fired from in relation to where the car was." On interlocutory appeal, defendants contest the denial of qualified immunity against Matatall and request exercise of pendent appellate jurisdiction over the denial of municipal immunity against the City.

No. 10-1842
*Hermiz v. City of Southfield, et al*.

## II. Jurisdiction

Though "[m]ost denials of summary judgment are nonfinal orders which cannot be appealed under 28 U.S.C. § 1291," *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006), an appellate court may review the denial of qualified immunity under the collateral-order doctrine, provided that it limits its review to legal questions—"whether the legal norms allegedly violated by the defendant were clearly established," *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)—and "take[s], as given, the facts that the district court assumed when it denied summary judgment," *Johnson*, 515 U.S. at 319.

Accordingly, we entertain the interlocutory appeal, reviewing de novo the district court's denial of qualified immunity on summary judgment, *Cochran v. Gilliam*, 656 F.3d 300, 305 (6th Cir. 2011), but "allow[ing] the case to proceed in the trial court" if we determine "that resolution of the legal questions turns on which version of disputed facts one believes," *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010); *Estate of Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008) ("[T]his court may simply ignore defendants' attempts to dispute plaintiffs' version of the facts, 'obviating the need to dismiss the entire appeal for lack of jurisdiction.'").

## III. No Qualified Immunity

To evaluate a qualified-immunity claim, we address two questions: "whether the facts, viewed in the light most favorable to the plaintiff, could support a finding that the defendant has

4

violated the plaintiff's constitutional rights" and whether "the defendant violated 'clearly established' constitutional rights." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The plaintiff bears the ultimate burden of demonstrating that the defendant is not entitled to qualified immunity." *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011) (citing *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th Cir. 2006)).

A. Violation of Constitutional Rights

As with other Fourth Amendment seizure cases, a deadly force case requires balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged." *Scott v. Harris*, 550 U.S. 372, 383 (2007). Specifically, we evaluate "whether reasonable officers in the position of [Matatall] would have believed that it was lawful under the circumstances to use the same degree of force," *Boyd v. Baeppler*, 215 F.3d 594, 600 (6th Cir. 2000), "view[ing] the scene and activity from the perspective . . . of the reasonable police officer at the scene," *id.* at 601. We also consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The estate faults Matatall for three actions: his decision to leave his car, his alleged failure to warn Hermiz of his intentions to employ deadly force, and his decision to shoot Hermiz's car as it passed to his side. Following the Sixth Circuit's practice of evaluating each alleged misstep of the officer separately, *see Dickerson v. McClellan*, 101 F.3d 1151, 1161–62 (6th Cir. 1996), we limit the scope of the deadly force inquiry to the "moments preceding the shooting," examining "whether the force used to effect that seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances," *id.* at 1161–62 (quoting *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992)). Upon such an inquiry, we conclude that questions of fact regarding the circumstances of Matatall's final shot preclude granting qualified immunity.

Fourth Amendment law provides that an officer may shoot at a driver that appears to pose an immediate threat to the officer's safety or the safety of others—for example, a driver who objectively appears ready to drive into an officer or bystander with his car. *See Brosseau v. Haugen*, 543 U.S. 194, 197–200 (2004) (citations omitted). But an officer may not continue to fire his weapon at a driver once the car moves away, leaving the officer and bystanders in a position of safety, *see, e.g.*, *Estate of Kirby*, 530 F.3d at 479–80, 482–83, unless the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car. *Compare Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (granting qualified immunity to officer who shot at an escaping car because the dangerousness of earlier car chase suggested driver's ongoing willingness to endanger others), *with Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011) (distinguishing between focusing deadly force on a fleeing vehicle that previously triggered a

"Hollywood-style car chase" and using deadly force against a fleeing vehicle whose only violation was speeding, whose prior chase was a "sleeper by comparison"); *Estate of Kirby*, 530 F.3d at 479, 482 (finding significant that the driver "stopped trying" to move and that the car was no longer in a position to endanger motorists or bystanders).

The record permits a jury to infer that Matatall fired at least one shot while safely to the side of the car's path, given that the second shot grazed the windshield post before hitting Hermiz in a left-hand-side to right-hand-side bias and that the fourth shot shattered the driver's-side window. Even if all of the bullets struck the front side of Hermiz's body, the above forensic evidence presents the possibility that Matatall stood far enough aside that the hood of Hermiz's car already passed the point where it could harm Matatall. A reasonable jury drawing inferences in the estate's favor could determine that an officer that aimed and fired shots while to the side of the vehicle—including a shot fired far enough from the side to shatter the driver's-side window—would have had time to realize that he was no longer in the path of the car and no longer in immediate danger.

Accepting this view of the circumstances, as we must, we conclude that Matatall lacked justification to fire at least his final shot. Even if the car appeared to head toward Matatall at one point, its single pass at five to ten miles per hour does not justify the inference that Hermiz posed an ongoing threat, especially considering that Hermiz's driving prior to the traffic stop presented no cause for concern. *Compare Sigley v. City of Parma Heights*, 437 F.3d 527, 536–37 (6th Cir. 2006) (denying qualified immunity to officer who shot driver of fleeing car, where evidence suggested that

driver hit one officer on the hand while backing up but later endeavored to avoid the officers during his escape out of parking lot, because "it is not clear . . . whether he intended to injure [the officer] or others on the scene"), *with Williams*, 496 F.3d at 484, 488 (condoning as reasonable an officer's decision to shoot suspected felon escaping in a vehicle, because the earlier pursuit, collision with police cruiser, and felon's willingness to initiate a second escape attempt, while knocking down an officer after he grasped the car and aimed his gun, all indicated an ongoing threat to others).

Because the district court identified a factual dispute material to the constitutionality of Matatall's use of deadly force, the first prong of the qualified-immunity analysis resolves in favor of proceeding to trial.

B.  Violation of Clearly Established Constitutional Rights

Even if Matatall's actions violated the Fourth Amendment, he may still claim qualified immunity if the legal rules he violated were not "clearly established" on September 27, 2007. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Where "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

At the time of the incident, Supreme Court and Sixth Circuit case law clearly established the unreasonableness of shooting at the driver of a car that no longer poses a threat. *See Sigley*, 437 F.3d at 531, 537 (denying qualified immunity in a case where officer shot driver through the driver's side window as car passed by, because driver "pose[d] no immediate threat to the officer and no threat

to others" and "the constitutional right allegedly violated was defined at the appropriate level of specificity to be clearly established" in 2002); *Smith v. Cupp*, 430 F.3d 766, 776–77 (6th Cir. 2005) (denying qualified immunity where officer shot at car as it passed by, through the driver's side window, recognizing the same "clearly established" principles as above). *Sigley* and *Cupp*, both decided before 2007, would inform a reasonable officer that shooting a driver while positioned to the side of his fleeing car violates the Fourth Amendment, absent some indication suggesting that the driver poses more than a fleeting threat.

Though Matatall urges that a reasonable officer could have acted as he did under such rapidly changing circumstances, *see Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . ."), we lack jurisdiction to review the factual question regarding whether an officer had sufficient time to perceive, at the time of the last shot through the driver's-side window, that the passing car no longer presents an immediate threat. Because we decide the legal question—whether "clearly established" Fourth Amendment law prohibited shooting at the driver of a fleeing car from the side, absent indications of an ongoing threat—in the estate's favor, we affirm the denial of summary judgment against Matatall.

IV.  Lack of Jurisdiction to Review Municipal Liability

9

Because we ultimately conclude that a factual issue precludes summary judgment on the qualified-immunity issue, leaving open the possibility that the City remains liable, we lack jurisdiction to review the municipal-liability issue. *See Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999) (observing that an appellate court lacks jurisdiction to review a municipal-liability issue on interlocutory appeal, unless a related qualified-immunity appeal "necessarily resolves" the municipal-liability issue (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)).

## V. Conclusion

We affirm the district court's denial of qualified immunity, and we decline for lack of jurisdiction to review the municipal-liability issue.