NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0407n.06

Case No. 22-5282

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 14, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| NICHOLAS FRANCIS, | ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| GREGORY L. HUFF; ANDREW S. PIERSON; LEIGH T. NOORBERGEN; CITY OF RED BANK, TENNESSEE, | ) ) ) ) | |
| | ) | OPINION |
| Defendant-Appellees. | ) ) | |

Before: BATCHELDER, BUSH, and DAVIS, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Donna Allen led two Red Bank police cruisers on a dangerous, nighttime, high-speed chase before driving into a wooded area at the dead end of a residential cul-de-sac. As her car spun its wheels in the mud, Officer Gregory L. Huff, Jr. exited his cruiser and approached Allen's vehicle on foot. Over the next twenty-five seconds, this already perilous encounter turned deadly. Allen reversed her car, hitting and knocking over Huff. After the officer got back on his feet, he heard the engine revving and saw the wheels turn toward him. The car moved forward, and Huff fired four gun shots. Tragically, Allen was killed, and her passenger, Nicholas Francis, was left paralyzed. Francis initiated this § 1983 action, which presents the question whether Huff's use of deadly force in those circumstances was reasonable. We hold that it was and therefore AFFIRM.

**I.**

Here are more details as to the evening in question, July 23, 2018. Officer Huff and Officer Andrew S. Pierson sat in their respective cruisers observing traffic when a car passing by caught their eyes. Donna Allen was driving the vehicle with Nicholas Francis in her front passenger seat. The parties dispute whether the officers had reasonable suspicion to follow the car, but what is not disputed is that the officers were soon in a high speed chase of Allen's vehicle. It escalated when Huff activated his blue lights and siren. Huff's dashcam footage shows that Allen's vehicle raced down the highway shifting in and out of lanes, at times in the middle and even on the shoulder of the road. Francis testified in his deposition that he "pleaded for [Allen] to stop." At one point he telephoned his mother "screaming, telling her to call 911…because [Allen] wouldn't pull over." But the driver ignored her passenger's distress as she reached speeds of over 100 miles per hour. Allen outraced the police for more than seventeen minutes, covering more than twenty miles in that time.

At one point Allen swerved off the highway and continued the chase down a narrow, two-lane road until it dead-ended into a residential cul-de-sac. Rather than stop, Allen "drove up a [] driveway, across the front lawn of a residence and [] into the forest." Huff and Pierson continued their pursuit on wheels until Huff's cruiser got stuck in the trees. He then exited his cruiser and followed Allen's vehicle on foot into a dark wooded area. As Huff advanced, he saw Allen's vehicle was spinning its wheels in the mud of an embankment. That impediment of the car's progress allowed Huff to approach the partially rolled down driver's side window and order Allen to stop. After this verbal command, Huff struck the window and then Allen's arm.

But rather than turn off her engine, Allen shifted into reverse, side swiped Huff, and knocked him to the ground. It was disputed on summary judgment whether Allen subsequently

ran over Huff's arm and leg once, twice, or not at all, but at a minimum, Huff screamed, and his cruiser's dash cam video shows Pierson running toward Allen's vehicle. Huff then stood up and turned to face the still running car.

At this point, according to Huff's testimony, he stood "alone in the dark wooded area when the headlights of the [Allen] vehicle again turned in his direction." He "heard the engine revving and saw the wheels turning toward him." Allen's vehicle shifted back into drive and began moving forward. Huff responded by firing four successive shots into Allen's vehicle while "positioned toward the front left panel of the Allen vehicle." Two bullets lodged in the driver's side door, one hit Allen in the chest and killed her, and the final passed through Allen and into Nicholas Francis, resulting in his paralysis.

Francis sued Officers Huff and Pierson, along with Staff Sergeant Leigh T. Noorbergen, the supervising officer who monitored Huff and Pierson's pursuit of Allen over the radio, and the City of Red Bank, their employer. Francis asserted claims under 42 U.S.C. § 1983, alleging that Huff violated his Fourth and Fourteenth Amendment Rights by using excessive force, that Pierson and Noorbergen failed to intervene in violation of the same, and that the City should be held liable under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). The district court granted defendants summary judgment on all claims. Francis timely appealed.

## II.

We review the grant of summary judgment de novo. *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020). A defendant is entitled to summary judgment when there is "no genuine dispute as to any material fact" and he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a jury to reasonably resolve a material factual issue in favor of either party. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986). At the summary judgment stage, all evidence is typically construed in favor of the non-moving party. *Wright*, 962 F.3d at 864. But where, as here, some of the relevant facts are recorded on video, we view those facts as the video depicts. *Cunningham v. Shelby Cnty*, 994 F.3d 761, 765 (6th Cir. 2021). If the facts shown in the video can be interpreted in multiple ways, or if the video does not show all relevant facts, we construe any relevant uncertainties or gaps in the light most favorable to the non-moving party. *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017).

We begin with the claims against Huff. The district court granted Huff summary judgment based on qualified immunity. At this stage of the proceedings, Huff is entitled to qualified immunity if (1) there is no proof that would allow a reasonable jury to find that Huff violated a constitutional or statutory right, or (2) that right was not clearly established at the time of the alleged violation. *Cunningham*, 994 F.3d at 764. We can address either prong first, and here, we begin and end with the first. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Francis argues that Huff violated his Fourth Amendment rights by using excessive force. The Fourth Amendment prohibits unreasonable seizures, and by implication, the use of excessive force. *Kind v. Taylor*, 694 F.3d 650, 662 (6th Cir. 2012). Thus, the force used to effect a seizure must be reasonable based on the totality of the circumstances. *See Graham v. Connor* 490 U.S. 386, 396 (1989). Courts generally determine reasonableness of an officer's use of force by considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.*

We consider "reasonableness at the moment" force was used, as judged from the perspective of a reasonable officer at the scene, rather than with hindsight. *See Goodwin v. City*

*of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham*, 490 U.S. at 396). Officers often must make split-second judgments in tense and rapidly evolving situations. *See Graham*, 490 U.S. at 397. Thus, we must afford "a built-in measure of deference to [an] officer's on-the-spot judgment." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). Even if an officer's assessment of a situation is ultimately wrong, there is no Fourth Amendment violation if "'a dangerous situation evolved quickly to a safe one before the police officer had a chance to realize the change.'" *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014) (quoting *Smith v. Cupp*, 430 F.3d 766, 774 (6th Cir. 2005)).

Deadly force, as was used in this case, is reasonable only when an officer has probable cause to believe a suspect poses an immediate threat to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). When deadly force is used against a fleeing vehicle, we ask whether the officer had "reason to believe that the [fleeing] car present[ed] an imminent danger" to "officers and members of the public in the area." *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005). For example, deadly force is reasonable when a driver appears ready to hit an officer or bystander with his vehicle. *See Cass*, 770 F.3d at 375 (quoting *Hermiz v. City of Southfield*, 484 Fed. Appx. 13, 16 (6th Cir. 2012) (citing *Brosseau v. Haugen*, 543 U.S. 194, 197–200 (2004)). It is generally no longer reasonable once the vehicle has moved away and the officer or bystander has reached a position of safety. *Gordon v. Bierenga*, 20 F.4th 1077, 1083 (6th Cir. 2021). However, even if there is no one in the direct path of a fleeing vehicle, an officer still may use deadly force if "'the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car.'" *Cass*, 770 F.3d at 375 (quoting *Hermiz*, 484 F. App'x at 16).

Given this authority as applied to the circumstances of this case, we find that Huff's use of deadly force was objectively reasonable, and thus, not excessive. Leading up to Huff's use of

force, Huff approached Allen's car on foot in the woods at night after having pursued the car in a protracted chase, during which Allen both refused to accede to police lights and sirens and ultimately left the roadway to evade seizure. Once Huff hit her window and arm with his baton, Allen responded by driving her car against Huff, knocking him to the ground. As Huff arose, he saw the headlights of Allen's vehicle turn in his direction. He next saw her wheels turn to face him, heard her engine rev, and witnessed the vehicle again moving forward. In these circumstances, having already been hit by Allen's car once, it was objectively reasonable for Huff to believe that Allen's vehicle presented an imminent danger to himself. Further, Allen was actively avoiding arrest. True, she was not initially suspected of a serious crime, but by the end of the high-speed chase, the balance of the factors identified in *Graham* confirmed that Huff's use of force was reasonable. *See Graham v. Connor* 490 U.S. 386, 396 (1989); *Williams v. City of Crosse Pointe* Park, 496 F.3d 482, 487 (6th Cir. 2007). In this tense, uncertain and rapidly evolving situation, Huff's multiple shots were not excessive.

We are not persuaded by Francis's argument otherwise. He contends that a material issue of fact remains as to where Officer Huff was standing when he fired into Allen's vehicle. First, he asserts that the district court "explicitly found that Officer Huff was standing in front of the Allen vehicle," which he argues "would have been impossible based on the physical facts of the event." Appellant's Br. at 14–15 (emphasis removed). But the district court made no such finding. The district court found that "[w]hen Defendant Huff fired, he was standing facing the Allen vehicle, 'positioned toward the front left panel of the Allen vehicle.'" This fact was not in dispute when the district court considered Defendants' motions for summary judgment. In fact, Francis said it was "[u]ndisputed for purposes of summary judgment that Huff was positioned toward the front left panel of the Allen vehicle" when he fired.

Still, Francis emphasizes that the trajectories of Huff's bullets raise a logical inference that Huff must have fired from the side of the car, rather than near the front, and that this positioning negates Huff's fear of imminent danger. Appellant's Reply at 2–3. However, the physical evidence demonstrates only that (1) there were bullet holes in the driver's door, and (2) a bullet passed through Allen and Struck Francis's spine, both of which could have happened as a result of shots fired from a variety of angles. Given that the physical evidence is consistent with bullets coming from a variety of angles, and given that before the district court Francis did not dispute a specific angle (toward the front left panel of the vehicle), he may not now demand a contrary inference on appeal. Moreover, the physical evidence, in fact, is not inconsistent with the threat of harm to the officer. Huff's dashcam video does not provide a clear picture of what happened as he was shooting, so we construe any relevant uncertainties in the light most favorable to Francis. *See Latits*, 878 F.3d at 544. But even so construed, an inference, unsupported by additional evidence, does not provide a sufficient basis for a jury to reasonably find in Francis's favor. *See Anderson*, 477 U.S. at 250. Francis does not recall Huff's use of force, did not dispute Huff's general location immediately preceding his use of force, and offered no additional evidence to support his contention that Huff did not have probable cause to believe he was in imminent danger. Appellant's Br. at 14–16. A bare assertion disagreeing with how physical evidence should be interpreted does not create a genuine, material dispute of fact for purposes of summary judgment. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (parties must show more than "some metaphysical doubt as to the material facts" to defeat a motion for summary judgment).

Further, the inquiry Francis encourages this court to undertake would significantly narrow the reasonableness inquiry the Fourth Amendment requires. *See Cass*, 770 F.3d at 377. The

relevant question is whether, based on the totality of the circumstances, Huff reasonably believed that Allen's vehicle was an imminent threat to him. Allen had just led police on a dangerous high-speed chase into a forest where she refused to comply with Huff's order to stop, and instead, hit him with her vehicle. When Huff saw her wheels and headlights turn in his direction, he had to make the split-second choice of how to respond to a driver who had already demonstrated her disregard for safety and her willingness to injure him in order to flee. *See Cass*, 770 F.3d at 377. The totality of the circumstances present here indicate that the deadly threat posed by Allen could have transformed into deadly action in a split second. The Fourth Amendment does not require an officer to make that gamble. *See Thornton v. City of Columbus*, 727 F. App'x 829, 837–38 (6th Cir. 2018). Thus, Huff's use of deadly force was reasonable, his actions did not violate Francis' Fourth Amendment rights, and Huff is entitled to qualified immunity.[1]

Francis further argues that the district court erred by granting summary judgment to Staff Sergeant Noorbergen as to Francis's claim that Noorbergen failed to intervene in Huff's use of excessive force. Appellant's Br. at 22. To succeed with this claim, Francis must show that (1) his constitutional rights were violated by Huff, and (2) Noorbergen, as Huff's supervising officer, encouraged or authorized Huff's use of unconstitutional force. *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010). Because Huff's use of force was lawful, there is no underlying constitutional violation, and Noorbergen cannot be liable for failing to intervene. *See Scott v. Clay Cnty, Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).

Finally, Francis appeals the grant of summary judgment to the City of Red Bank. Francis's claims against the City allege liability under *Monell*, which provides that a municipal entity such

---

[1] Francis also contends that Huff violated his Fourteenth Amendment rights, but as the district court noted, Francis waived his Fourteenth Amendment claims against every Defendant. *See United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021); *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).

as Red Bank can be liable under 42 U.S.C. § 1983 if a plaintiff shows that (1) he was deprived of a constitutional right, and (2) the municipal entity is responsible for this deprivation. *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015). Because Francis was not deprived of a constitutional right, he cannot prevail on a claim against Red Bank based on a theory of municipal liability. *Scott*, 205 F.3d at 879.

### III.

For the forgoing reasons we AFFIRM the district court's summary judgment.